959 F.2d 1566
 60 Fair Empl.Prac.Cas. (BNA) 800,
58 Empl. Prac. Dec. P 41,481, 22 Fed.R.Serv.3d 799
 George WASHINGTON and Edward P. Barnes, Sr., Individually
and as Class Representatives, et al.; Cynthia Knight,
Margie Andrews and Pamela Tobler, Individually and as Class
Representatives, et al.; Donald Davis (Plaintiff in
Intervention) Individually and on behalf of all others
similarly situated, Plaintiffs-Appellants,
v.
BROWN & WILLIAMSON TOBACCO CORPORATION, Defendant-Appellee.
 No. 91-8242.
 United States Court of Appeals,
Eleventh Circuit.
 May 8, 1992.
 
 Charles A. Mathis, Jr., Mathis, Sands, Jordan & Adams, P.C., Brian G. Combs, Milledgeville, Ga., Steve Ralston, NAACP Legal Defense Fund, New York City, for plaintiffs-appellants.
 Frank C. Jones, William A. Clineburg, Jr., Richard A. Schneider, L. Joseph Loveland, King & Spalding, Atlanta, Ga., Buckner F. Melton, Joseph M. Popper, Jr., Sell & Melton, Macon, Ga., Louisa Hall, L. Elizabeth Foley, Brown & Williamson Tobacco Corp., Louisville, Ky., for defendant-appellee.
 Appeal from the United States District Court for the Middle District of Georgia.
 Before KRAVITCH and EDMONDSON, Circuit Judges, and HENDERSON, Senior Circuit Judge.
 EDMONDSON, Circuit Judge:
 
 
 1
 Named plaintiffs in a proposed class action appeal the district court's denial of class certification, restrictions on classwide discovery, and ultimate decision on the merits of their individual claims.
 
 FACTS
 
 2
 Plaintiffs George Washington and Edward Barnes started this proposed class action in June 1980 against Brown & Williamson Tobacco Corporation ("B & W") alleging race-based employment discrimination in violation of Title VII of the Civil Rights Act of 1964 (42 U.S.C. § 2000e et seq.) and 42 U.S.C. § 1981. Their complaint specifically targeted B & W's cigarette-manufacturing plant in Macon, Georgia. Washington claimed he had been improperly disciplined and discharged because of his race and in retaliation for filing Equal Employment Opportunity Commission ("EEOC") charges.[1] Barnes raised similar allegations.[2]
 
 
 3
 Two other plaintiffs, Cynthia Knight and Pamela Tobler, joined the action through an amended complaint filed in July 1980.[3] Knight charged that B & W discriminatorily denied her training and initially failed to reimburse her for a college course at a local university. She also alleged racial discrimination in her annual performance appraisals and denial of promotion. Tobler claimed she was unfairly discharged for leaving the plant without her supervisor's permission. Donald Davis, an unsuccessful applicant for employment, intervened in 1983 to become the fifth named plaintiff.[4]
 
 
 4
 In addition to their individual discrimination claims, the named plaintiffs sought to represent "all black persons currently or formerly employed at B & W's Macon plant, as well as black unsuccessful past applicants and black future applicants for employment at B & W's Macon plant." Plaintiffs' July 22, 1980 Amended Complaint, Paragraph 6. The complaint alleged racial discrimination in recruiting, hiring, job assignments, training, evaluations, promotions, transfers, discipline, retaliation--basically every employment decision the company made. Plaintiffs' "Memo of Law in Support of Motion to Certify Class" of February 27, 1981, confirmed the group's goal of asserting an "across-the-board" attack on B & W's employment practices and asserting a class defined by race.
 
 
 5
 After a March 1981 discovery conference, the district court limited discovery to the class-certification issue, postponing discovery on the merits.[5] Over the next three years, plaintiffs requested and defendants generated much information about B & W's employment practices. During this period, plaintiffs made no attempt to certify the class. In early 1984, when plaintiffs submitted requests B & W believed went beyond the scope of discovery appropriate on the certification issue, B & W moved to reconvene the discovery conference; and plaintiffs filed a motion to compel discovery.
 
 
 6
 The district court conducted an evidentiary hearing in September 1984, to determine whether plaintiffs could show a sufficient possibility of class certification to warrant discovery on the merits of the class claims. After hearing testimony from the five named plaintiffs and a statistical expert,[6] the court concluded plaintiffs lacked "the requisite nexus with the proposed class members." Believing the requested discovery was irrelevant to class certification, the court denied plaintiffs' motion to compel and continued to limit discovery to the class certification issue.[7]
 
 
 7
 Plaintiffs moved for reconsideration of the discovery order several months later; the motion was denied. In the alternative, plaintiffs asked that the court decide the class-certification issue on the existing record with no trial or, if certification were denied, to rule on the individual claims on the existing record with no trial. The district court refused, upholding its earlier discovery ruling and formally denying class certification. The court then directed the parties to complete discovery on the individual claims within 90 days.
 
 
 8
 At the ensuing non-jury trial, none of the plaintiffs testified, choosing instead to rest on the existing record. After the trial, the court decided that statistical evidence and evidence of pattern discrimination might be relevant in deciding the individual claims of race discrimination and therefore ordered B & W to produce payroll computer tapes for plaintiffs' expert to review. Both parties submitted expert commentary on the tapes.
 
 
 9
 The district court rendered a final decision in 1991, see, Washington v. Brown & Williamson Tobacco Corp., 756 F.Supp. 1547 (M.D.Ga.1991), denying plaintiffs' individual claims and specifically finding that (1) Washington's termination was due to his inability to supervise his employees properly; (2) Barnes' discipline was the result of poor performance; (3) Knight's poor ratings were related to the poor performance of her subordinates; (4) Tobler's discharge was due to a continuing attendance problem and, more specifically, to her failure to notify her supervisor that she was leaving the plant on one particular occasion; and (5) Davis was simply unqualified for the highly technical position for which he applied. All five plaintiffs now appeal.DISCUSSION
 
 Class Certification
 
 10
 The district court has broad discretion in determining whether to certify a class. Coon v. Georgia Pacific Co., 829 F.2d 1563, 1566 (11th Cir.1987). Federal Rule of Civil Procedure 23(a) lists the prerequisites to a class action: "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class [commonality], (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [typicality], and (4) the representative parties will fairly and adequately protect the interests of the class."[8]
 
 
 11
 When this suit was originally filed, the Fifth Circuit permitted across-the-board class actions, in which commonality or typicality requirements were presumed to be met when an employment discrimination victim representing a class based on race or sex attacked all of the employer's unequal employment practices committed pursuant to a policy of racial or sexual discrimination. See Johnson v. Georgia Highway Express, Inc., 417 F.2d 1122 (5th Cir.1969) (racial discrimination). So, it was unsurprising that plaintiffs with highly individual claims, like plaintiffs Washington, Barnes, Knight, and Tobler, would seek to represent all blacks that had ever had contact with B & W in an employment context and try to attack nearly every employment decision the company made.
 
 
 12
 But two years into this litigation, the Supreme Court ended the practice of across-the-board class actions in General Telephone Co. v. Falcon, 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Although the Court recognized that "racial discrimination is by definition class discrimination," id. at 157, 102 S.Ct. at 2370,
 
 
 13
 the allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified. Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.
 
 
 14
 Id. Instead, each of the Rule 23(a) requirements must be demonstrated independently of the fact that the members of the proposed plaintiff class were all of the same race, sex, or national origin. See Coon, 829 F.2d at 1567 (plaintiff precluded from representing all past, present and potential women employees in all facets of employment); Griffin v. Dugger, 823 F.2d 1476, 1489 (11th Cir.1987) (blacks), cert. denied, 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1988); Cox v. American Cast Iron Pipe Co., 784 F.2d 1546, 1558 (11th Cir.1986) (women).
 
 
 15
 Falcon allows for the certification of race-based or sex-based classes if the class challenges specific employment practices. See, e.g., Falcon, 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15 (both applicants and incumbents could challenge test if both required to take it and both potentially prejudiced by test[9]); Cox, 784 F.2d at 1558 (limiting certification to class of women with claims of sexual discrimination in compensation, promotion and training); Giles v. Ireland, 742 F.2d 1366, 1371 (11th Cir.1984) (class limited to blacks in specific work group claiming unequal pay and denial of promotions); see also Carpenter v. Stephen F. Austin State Univ., 706 F.2d 608 (5th Cir.1983) (attack on discrimination in assignment, pay, promotion and termination constitutes an attack on employer's "channelling" practices (isolation of minority in lower levels with little opportunity for advancement)). But certification in these cases is unlike what plaintiffs seek here: certification of a class challenging every employer practice with respect to that class.
 
 
 16
 The five named plaintiffs have five different disparate treatment claims;[10] the only thing they have in common with the class they seek to represent--or each other--is race. Without specific questions of law or fact common to plaintiffs and the members of the class they seek to represent, the district court cannot presume plaintiffs' claims are typical of other claims against B & W by black employees and applicants. Because Falcon and its progeny preclude the kind of across-the-board class actions plaintiffs attempted in this case, we affirm the district court's denial of class certification.[11]
 
 Discovery
 
 17
 The standard of review for discovery issues is whether the district court abused its discretion. Langston v. ACT, 890 F.2d 380, 388 (11th Cir.1989). Plaintiffs argue they were unfairly prevented from proving their class claims because the district court failed to allow them "virtually any classwide discovery" before denying class certification.
 
 
 18
 The scope of discovery in Title VII cases is not without limits.[12] The information sought must be relevant and not overly burdensome to the responding party. Trevino v. Celanese Corp., 701 F.2d 397, 406 (5th Cir.1983) (quoting Rich v. Martin Marietta Corp., 522 F.2d 333, 343 (10th Cir.1975)). Discovery should be tailored to the issues involved in the particular case. Robbins v. Camden City Bd. of Educ., 105 F.R.D. 49, 55 (D.N.J.1985).
 
 
 19
 In the class action context, one of the first issues confronting the court is class certification. See Fed.R.Civ.P. 23(c)(1) ("As soon as practicable after the commencement of the action brought as a class action, the court shall determine by order whether it is to be so maintained"). To make early class determination practicable and to best serve the ends of fairness and efficiency, courts may allow classwide discovery on the certification issue and postpone classwide discovery on the merits. See Stewart v. Winter, 669 F.2d 328, 331 (5th Cir.1982). In Stewart, prison inmates sought class certification to challenge confinement conditions in county jails. The court denied a discovery request for documents about all facets of life in 82 county jails in Mississippi, noting that, although the information might have been relevant to the merits of the case, little of it was "necessary or helpful" to the class-certification issue. Id. at 332.
 
 
 20
 Like the plaintiffs in Stewart, plaintiffs in this case requested much discovery that was irrelevant to the class-certification issue. In addition, plaintiffs' assertion that the district court failed to allow "virtually all classwide discovery" overlooks the extensive classwide information B & W provided over the course of discovery on the certification issue.[13] When, after three years, plaintiffs were still unable to identify a class more specific than "all blacks," the court correctly ended classwide discovery. The court allowed additional discovery on the individual claims and eventually ordered the company to release the computer tapes previously requested by the plaintiffs.[14] We see no abuse of discretion in the district court's discovery rulings.
 
 Merits of the Individual Claims
 
 21
 The district court's ruling on the merits of the individual claims is affirmed. Plaintiffs have not identified, nor do we view any of the court's factual findings as clearly erroneous. See Butler v. Hamilton, 542 F.2d 835, 838 (10th Cir.1976) (appellants must point out specifically where findings of trial court are clearly erroneous).
 
 
 22
 AFFIRMED.
 
 
 
 [1]
 Washington and Barnes had both filed charges of discrimination with the EEOC pursuant to Title VII on more than one occasion. Each time their charges were rejected by the EEOC
 
 
 [2]
 Barnes was still employed by B & W when the complaint was filed. He alleged his discharge three years after the suit was filed was racially motivated as well
 
 
 [3]
 Another employee of the Macon plant, Margie Andrews, joined at the same time but later voluntarily dismissed her claims
 
 
 [4]
 Knight, Tobler and Davis never filed an EEOC charge; all relied on Washington and Barnes' EEOC filings to satisfy the plaintiff class' Title VII requirement of exhausting administrative remedies before bringing suit. But as incumbent employees of B & W, Washington and Barnes lacked standing to object to the company's hiring practices on behalf of Davis. So, the district court dismissed Davis' Title VII claim. This ruling is not in dispute on appeal
 
 
 [5]
 A transcript of the conference shows counsel for plaintiffs agreed to this approach
 
 
 [6]
 The expert identified certain job classifications (which none of the five named plaintiffs held) in which blacks might be underrepresented. He claimed additional information was needed before he could conclusively state that a pattern of discrimination or individual discrimination existed
 
 
 [7]
 Plaintiffs responded by filing a petition for a writ of mandamus and a writ of prohibition in this court; both were denied
 
 
 [8]
 The requirements of commonality, typicality and adequacy of representation tend to merge. General Telephone Co. v. Falcon, 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2370 n. 13, 72 L.Ed.2d 740 (1982). Commonality and typicality represent the "nexus" necessary between class representatives and class members
 
 
 [9]
 Incumbent employees generally cannot represent a class containing unsuccessful applicants. Falcon, 457 U.S. at 158-59, 102 S.Ct. at 2371. Accord, Griffin v. Dugger, 823 F.2d 1476, 1483-84 (11th Cir.1987); Walker v. Jim Dandy Co., 747 F.2d 1360, 1364-65 (11th Cir.1984). Plaintiffs in this case sought to circumvent this problem by including Davis, an unsuccessful applicant. The attempt failed because Davis' application was not a class-type claim: he interviewed for a technical job which required evaluation of each applicant's personal skills
 
 
 [10]
 That plaintiffs raise disparate treatment claims, while not dispositive, weighs against finding the commonality and typicality required by Rule 23. "Disparate impact cases typically involve readily identified, objectively applied employment practices such as testing procedures. The common reach of such practices is likely to be clearer and easier to establish than a general policy of race discrimination alleged to unite otherwise factually dissimilar disparate treatment claims." Nelson v. United States Steel Corp., 709 F.2d 675, 679 n. 9 (11th Cir.1983)
 
 
 [11]
 Plaintiffs also complain that the court improperly considered the merits of the case in deciding to deny class certification. We disagree. "[A] district court holding a pre-trial certification hearing has no 'authority to conduct a preliminary inquiry into the merits of the suit,' ... [but] evidence relevant to the commonality requirement is often intertwined with the merits." Nelson, 709 F.2d at 679-80. See also Falcon, 457 U.S. at 160, 102 S.Ct. at 2372 ("Sometimes it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question"); Brooks v. Southern Bell Telephone & Telegraph Co., 133 F.R.D. 54, 56 (S.D.Fla.1990) (nature of individual claims directly relevant to determination of whether matters in controversy are mainly individual in character or are susceptible to proof in class action)
 
 
 [12]
 Most of the opinions plaintiffs cite in support of broad discovery involve discovery restrictions that were much more severe than the restrictions imposed in this case. See, e.g., Trevino v. Celanese Corp., 701 F.2d 397, 405 (5th Cir.1983) (amid charges of employment discrimination based upon national origin, lower court barred discovery of internal organization of management, identity of management, identifying characteristics of facilities, descriptions of documents or kinds of documents in company's personnel recordkeeping system, identity of those initiating and reviewing such documents, and purging policies and procedures for internal personnel records); Williams v. City of Dothan, Ala., 745 F.2d 1406, 1415 (11th Cir.1984) (discovery inappropriately restricted to limited time when greater historical background necessary). Plaintiff also cites authority that pre-dates Falcon. See, e.g., Burns v. Thiokol, 483 F.2d 300, 304-05 (5th Cir.1973)
 
 
 [13]
 Plaintiffs argue that they did not have "the number and names of persons, by race, who sought initial employment, promotion or transfer," and "the impact, by race, of each step of each such process and the impact ... of the process as a whole." Among other information, B & W provided the following:
 (1) a list of the plant's departments and all job classifications for each year from 1975 through 1981;
 (2) a description of changes in the composition and structure of the plant's departments, as well as job positions that were added;
 (3) a list of any job or series of jobs that were held by white employees only or by black employees only;
 (4) the dates upon which B & W submitted "Employer Information Report EEO-1 Forms";
 (5) the EEO-1 forms themselves;
 (6) the identity of the unions;
 (7) a 14-page chart showing the number of vacancies in each job title during the period from 1975 through 1981, displaying whether those vacancies were filled by hire, relocation, or promotion, subdivided by race;
 (8) a chart showing the job titles, employment dates, races, and names of all persons holding policy-making positions for the Macon plant;
 (9) a chart showing the same information with respect to decision-making positions;
 (10) a narrative description of tests administered since 1975 with respect to promoting or transferring incumbent employees;
 (11) a chart showing the number of persons who took certain of B & W's tests who were not promoted or transferred;
 (12) a narrative description of the plant's supervisory identification center for promoting persons to supervisory jobs, including charts showing the persons (and their race) that served as assessors and the names and races of persons who received a passing score at the center and were not promoted;
 (13) a narrative description of the qualifications for promotion of hourly and salaried employees;
 (14) a chart showing each job classification from 1975 through 1981, displaying the number of white and black incumbents in each year and the minimum salary for each job;
 (15) additional charts showing the minimum annual salaries for all job classifications at the plant covering the years 1981 through 1983; a narrative description of the manner in which vacancies were filled; and
 (16) a chart showing jobs filled between 1976 and 1981 through lateral transfer.
 
 
 [14]
 Plaintiffs claim the order releasing the tapes came too late because possession of these tapes at an earlier point in the litigation could have aided their attempt at class certification. Plaintiffs provide no explanation of how the tapes supported certification or why plaintiffs did not raise the certification issue again once they had the tapes. See Falcon, 457 U.S. at 160, 102 S.Ct. at 2372 (even after decision rendered on certification issue, judge remains free to modify it in light of later developments in litigation); Fed.R.Civ.P. 23(c)(1) (certification decision may be conditional and may be altered or amended before decision on merits)