Henry REYES, George Lopez, Alex Lamour, Elsa Graciela Alzueta, Cesar Herrera, & Maria Magdelena Herrera, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

THE WALT DISNEY WORLD COMPANY, a Delaware corporation, Defendant.

No. 97–345–CIV–ORL–18B.

United States District Court, M.D. Florida, Orlando Division.

Feb. 3, 1998.

John R. Bush, Alicia Jean Schumacher, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, Bruce E. Gerstein, Noah Silverman, Jerald M. Stein, Scott W. Fisher, Garwin, Bronzaft, Gerstein & Fisher, L.L.P., New York, NY, for Henry Reyes.

John R. Bush, Alicia Jean Schumacher, Bush, Ross, Gardner, Warren & Rudy, P.A., Tampa, FL, Jonathan H. Stein, Chapman & Cutler, Chicago, IL, Bruce E. Gerstein, Noah Silverman, Jerald M. Stein, Scott W. Fisher, Garwin, Bronzaft, Gerstein & Fisher, L.L.P., New York, NY, for George Lopez, Alex Lamour, Elsa Graciela Alzueta, Cesar Herrera, Maria Magdalena Herrera.

Charles Robinson Fawsett, Patrick M. Muldowney, Shutts & Bowen, Orlando, FL, Randall W. Lord, Walt Disney World Co. Legal Dept., Lake Buena Vista, FL, Kerry Alan Scanlon, Dean C. Garfield, Kaye, Scholer, Fierman, Hays & Handler, Washington, DC, for Walt Disney World Company.

## ORDER

G. KENDALL SHARP, District Judge.

Plaintiffs in this case are current and former hispanic employees of defendant The Walt Disney World Company (Disney). They claim to have suffered employment discrimination because of their national origin. Specifically, plaintiffs claim that Disney maintains "discriminatory employment policies and practices ... prevalent throughout Disney's Florida theme parks and resorts, hotels and other Disney operated institutions related to those theme parks." Plaintiffs, therefore, purport to bring this action on their behalf and on behalf of those similarly situated. They seek declaratory, injunctive, and monetary relief, and ground their claims upon the Civil Rights Act of 1871, codified at 42 U.S.C. § 1981, the Civil Rights Act of 1964, codified at 42 U.S.C. § 2000e, and the corresponding Florida statutory law. The case is presently before the court on plaintiffs' motion for class certification pursuant to Rule 23 of the Federal Rules of Civil Procedure, to which defendants have responded in opposition. Having reviewed the case file and relevant law, the court concludes that class certification is not appropriate.

### I. Factual Background

Plaintiffs Henry Reyes, Elsa Graciela Alzueta, Cesar Herrera, and Maria Magdelena Herrera are all currently employed by Disney. They each work as temporary-basis banquet servers in Disney's Contemporary resort hotel. Each claims to have been included on a list of preferred temporary employees, which Disney would routinely call to work should it find itself short-staffed.

In the latter part of 1995, Disney hired Kevin Harper as its Banquet Manager. Plaintiffs claim that he "further enforced Disney's policy of discrimination against Hispanics, in that he hired exclusively non-Hispanic caucasian employees and included only non-Hispanic caucasian employees on the preferred list of temporary workers." (Complaint at ¶ 25.) Harper allegedly told plaintiff Reyes that he did not like Spanish-speaking people and that he believed their quality of work to be inferior to that of caucasian employees. Plaintiffs similarly allege that Harper directed one of his Banquet Captains, Bruno Izquierdo, to cease calling hispanics for temporary work assignments. Harper is also reported to have made discriminatory statements regarding hispanics.

Plaintiff George Lopez was formerly employed by Disney, during which time he served as an Area Supervisor, among other positions, in its Security department. He, like the other plaintiffs, contends that Disney maintains a policy of discrimination against hispanic employees. Specifically, he claims to have been retaliated against for voicing this opinion in a survey of Disney employees. He contends that, despite exemplary performance evaluations, he began being demoted shortly after submitting the completed survey. He maintains that lesser-qualified caucasian employees were promoted in his stead and that he was placed in a position that required skills well below those he possessed, in an effort to humiliate him and create an unpleasant working environment for him. He claims to have been constructively discharged from Disney in May 1995.

Plaintiff Alex Lamour was formally employed by Disney as a Houseman in one or more of its resorts. Like the other plaintiffs, Lamour contends that he was denied advancement as well as related employment opportunities and benefits because of his hispanic lineage. He further claims that Disney was slow in responding to his complaints of discrimination, or did not respond at all. After internally pursuing his claims of discrimination, he avers that he was demoted and had his advancement and benefits curtailed in retaliation. Ultimately, "[f]rustrated by Disney's intentional discriminatory treatment against Hispanics, and suffering from various physical ailments which he believes have been induced by job-related stress and frustration he had suffered, Lamour resigned

from Disney on or about April 8, 1995." (Complaint at ¶ 46.)

Relying upon the allegations set forth above, plaintiffs purport to bring this action on behalf of:

all Hispanic persons who either (a) are or have been employed at Disney's Florida theme parks and/or in resorts, hotels and other institutions related to those theme parks; and/or (b) who have sought employment at Disney's Florida theme parks and/or resorts, hotels and other institutions related to those theme parks, and who have been, continue to be, or may in the future be adversely affected by Disney's discriminatory policies and practices as complained of herein . . . .

(Complaint at ¶ 14.)

## II. Legal Discussion

The only issue presently before the court is whether the instant case should be certified as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiffs contend that each prerequisite to class certification is satisfied through the underlying facts of the case. Defendants advance several arguments in opposition, the most significant of which surrounds the issue of the plaintiffs' standing to sue. After setting forth the applicable legal standard, the court will evaluate plaintiffs' arguments in favor and defendant's arguments in opposition to class certification.

■ When faced with a motion for class certification, the court must "determine by order whether it is to be so maintained." Fed.R.Civ.P. 23(c)(1) (West 1997); *see also Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir.1992) (the issue of whether to allow a cause to proceed as a class action is one committed to the sound discretion of the district court). The first issue to be addressed in resolving a motion for class certification is that of standing. *See Jones v. Firestone Tire & Rubber Co.*, 977 F.2d 527, 531 (11th Cir.1992), *cert. denied*, 508 U.S. 961, 113 S.Ct. 2932, 124 L.Ed.2d 682 (1993) ("any analysis of class certification must begin with the issue of standing . . .").

■ Defendants contend that plaintiffs lack the constitutional standing required to represent the proposed class. According to the United States Court of Appeals for the Eleventh Circuit, "each claim [plaintiffs make on behalf of the class] must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one plaintiff has suffered the injury that gives rise to that claim." *Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir.1987), *cert. denied*, 486 U.S. 1005, 108 S.Ct. 1729, 100 L.Ed.2d 193 (1988). The six plaintiffs at bar were all hired, at one time or another, by Disney. Yet, they purport to represent a class of persons who were initially denied employment with Disney as well as those who may be denied employment in the future. (Complaint at ¶ 14). Clearly, as the proposed class is presently drawn, plaintiffs lack standing to pursue the action on behalf of each proposed class member. In short, the class is presently overbroad when compared with the substantive allegations made by the named plaintiffs. Notwithstanding this shortcoming, the court will evaluate the substantive factors of Rule 23 to bolster its conclusion that the instant case does not warrant class certification.

■ A party seeking class certification must demonstrate, under nothing less than rigorous scrutiny, that all of the requirements of Rule 23(a) are clearly satisfied. *General Tel. Co. v. Falcon*, 457 U.S. 147, 161, 102 S.Ct. 2364, 2372–73, 72 L.Ed.2d 740 (1982); *accord Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir.1984). Rule 23(a) provides that:

One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

Fed.R.Civ.P. 23(a) (West 1997). The court, by way of Rule 23(c)(1), possesses broad discretion in interpreting these prerequisites

to determine whether a cause may proceed as a class action. *Kilgo v. Bowman Transp., Inc.*, 789 F.2d 859, 877 (11th Cir.1986). In so doing the court does not evaluate the merits of the case; rather, the court focusses solely on the prerequisites while accepting plaintiffs' stated allegations as true. *In re Carbon Dioxide Antitrust Litig.*, 149 F.R.D. 229, 232 (M.D.Fla.1993).

Inasmuch as the court has determined the proposed class to be too broad to confer standing upon the instant plaintiffs, the court will withhold any discussion of the first element of the Rule 23(a), numerosity, and proceed directly to a discussion of plaintiffs' main difficulty in securing class certification for the instant case. That difficulty lies in the second and third elements of Rule 23(a).

The second and third elements of Rule 23(a) are commonly known as commonality and typicality. Though they constitute two distinct limitations on class certification, the commonality and typicality requirements of Rule 23(a)(2) and (a)(3) tend to merge in practice. *See Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2371 n. 13. Defendants contend that plaintiffs' proposed action is an "across-the-board" class action which has been held not to meet these requirements. In 1969, the former United States Court of Appeals for the Fifth Circuit announced a rule in *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122 (5th Cir.1969), that "permitted a single title VII plaintiff to represent all members of a racial, religious, gender, or national group who had allegedly been harmed by an employer's discriminatory practices." Note, *Certifying Classes and Subclasses in Title VII Suits*, 99 Harv. L.Rev. 619, 621 (1986). Such a class could include employees who held different jobs, applicants, deterred applicants, future employees, and former employees who belonged to the same group. *See id.* (citations omitted).

In *Falcon*, the Supreme Court ruled that such "across-the-board" class actions did not meet the commonality and typicality require-ᵣ.ents of Rule 23(a). In *Falcon*, a Mexican–American employee who was denied a promotion brought a class action purporting to represent all "Mexican–American persons who are employed, or who might be employed" by his employer and "who have been and who continue to be or might be adversely affected by the practices complained of herein." *Falcon*, 457 U.S. at 151, 102 S.Ct. at 2367–68. While the Court acknowledged that "racial discrimination [was] by definition class discrimination," the alleged existence of such discrimination does not necessarily justify a class action. *Id.* at 157, 102 S.Ct. at 2370. As the Court noted,

> Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law and fact and that the individual's claim will be typical of the class claims.

*Id.* A proposed class that encompasses all members of a particular ethnic group affected by an employer can be certified only if "this policy of ethnic discrimination is reflected in [the employer's] other employment practices, such as hiring, in the *same* way it is manifested in the promotion practices." *Id.*, at 158, 102 S.Ct. at 2371 (emphasis added).

While the Supreme Court rejected the presumption in favor of certification in racial discrimination cases, it acknowledged that class actions could be appropriate vehicles to bring claims alleging certain types of discrimination. The Court noted in footnote fifteen of its *Falcon* decision,

> Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring · and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes. In this regard it is noteworthy that Title VII prohibits discriminatory employment practices, not an abstract policy of discrimination.

*Id.* at 158 n. 15, 102 S.Ct. at 2371 n. 15. For example, if an employer used a particular

testing procedure for both applicants for jobs and employees seeking promotions, and a putative class plaintiff alleged that the procedure was biased, a class action "clearly would satisfy the commonality and typicality requirements of Rule 23(a)." *Id.*

The Eleventh Circuit has interpreted *Falcon* strictly and generally has not permitted broad class actions based on ethnic or gender-based employment discrimination, absent evidence that an employer acted in a similar manner toward all members of the particular group. "[A]s a general rule, incumbent employees cannot represent a class that includes applicants and ... even a general policy of discrimination will not justify a class of both applicants and employees." *Griffin,* 823 F.2d at 1487. The court continued by stating that the situations identified in footnote fifteen of *Falcon* are "exceptions to the general rule that applicants and incumbent employees cannot share the same class." *Id.* In another case the Eleventh Circuit echoed the limited nature of footnote fifteen by rejecting "certification of a class challenging *every* employer practice with respect to that class," when certain practices applied only to certain members of the proposed class. *Washington,* 959 F.2d at 1570 (emphasis in original); *see also Walker v. Jim Dandy Co.,* 747 F.2d 1360, 1363 (11th Cir.1984); *Gilchrist,* 733 F.2d at 1555; *Eastland v. Tennessee Valley Auth.,* 704 F.2d 613, 618 (11th Cir.1983), *cert. denied,* 465 U.S. 1066, 104 S.Ct. 1415, 79 L.Ed.2d 741 (1984).

■ Turning to the merits of the instant motion, plaintiffs ground their complaint upon a disparate treatment theory. (Complaint at ¶ 1, 21, 83.) The Eleventh Circuit has previously written that the prosecution of disparate treatment claims "weighs against finding the commonality and typicality required by Rule 23." *Washington,* 959 F.2d at 1570 n. 10. Such claims, by their nature, are highly individualized and are, therefore, not generally "conducive to class treatment." [cite]. To maintain a class action in such a case, the representative plaintiffs must make a specific presentation of facts tending to demonstrate that proof sufficient to succeed on their claims will inevitably "bridge the gap" between their claims and those of the putative class. *Falcon,* 457 U.S. at 157–58, 102 S.Ct. at 2370–71. In short, the representative plaintiffs must establish a factual and legal nexus between their claims and those of the proposed class. *See Morrison v. Booth,* 763 F.2d 1366, 1371 (11th Cir.1985). As the proposed class in the instant case is presently defined, the representative plaintiffs share only one thing with all putative class members: their hispanic heritage.

■ Indeed, the representative plaintiffs were employed by three separate departments or divisions within Disney's organization: the Contemporary resort, the Security department, and the Janitorial Services department. Each of these departments or divisions presumably have a different hierarchy of decision-makers, which means that each plaintiff or putative class member has his or her own set of unique circumstances surrounding the adverse employment action about which they now attempt to collectively complain. The instant case is the classic type with which courts are justifiably concerned over the very real danger of certifying a large class action which will thereafter most likely splinter into an unmanageable plethora of individualized claims. *See, e.g., Coon v. Georgia Pac. Corp.,* 829 F.2d 1563, 1566 (11th Cir.1987); *Morrison,* 763 F.2d at 1371 (rejecting typical *post hoc ergo propter hoc* theory for seeking class certification); *Hall v. Burger King Corp.,* No. 89–0260–CIV–KEHOE, 1992 WL 372354, at *3–4 (S.D.Fla. Oct. 26, 1992). Inasmuch as plaintiffs in the instant case have advanced across-the-board class allegations of employment discrimination allegedly predicated upon racial/national origin animus, the court must conclude on the reasoning and authority of *Falcon* and its circuit progeny that plaintiffs have failed to satisfy the commonality and typicality requirements of Rule 23(a) of the Federal Rules of Civil Procedure; this comes in addition to the previously-identified standing defects.

### III. Conclusion

In accordance with the foregoing discussion, the court concludes that plaintiffs lack standing to represent the class as drawn, and they have failed to satisfy the dictates of

Rule 23(a) of the Federal Rules of Civil Procedure. Specifically, the proposed class is presently overbroad as it relates to plaintiffs' representative substantive claims. As such, plaintiffs' motion for class certification (Doc. 33) is **DENIED**.