Briget DRAYTON, Wanda Gibbs Mitchell, and Anthony Rich, individually and on behalf of all persons similarly situated, Plaintiffs,

v.

WESTERN AUTO SUPPLY COMPANY and ADVANCE STORES COMPANY, INC., Defendants.

No. 98–1582–CIV–T–26E.

United States District Court,
M.D. Florida,
Tampa Division.

Dec. 6, 2000.

Wilfried Hermann Florin, Thomas D. Roebig, Jr., Wolfgang M. Florin, Christopher D. Gray, Angela E. Outten, Florin, Roebig & Walker, P.A., Palm Harbor, FL, J. Hoke Peacock, III, Anthony G. Buzbee, Joseph S. Grinstein, Susman Godfrey, L.L.P., Houston, TX, for plaintiffs.

James Richard Wiley, Cathleen G. Bell, Carlton Fields, P.A., Tampa, FL, Sylvia H. Walbolt, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A., St. Petersburg, FL, Gerald C. Peterson, Winston & Strawn, Chicago, IL, Joan B. Tucker Fife, Winston & Strawn, Washington, DC, for defendants.

## *ORDER*

LAZZARA, District Judge.

Before the Court is Plaintiffs' Motion for Class Certification (Dkt. 126). Defendants filed memoranda in opposition to Plaintiffs' Motion (Dkts. 141 & 143), Plaintiffs filed replies (Dkts. 154 & 157) and Defendants filed a Joint Sur–Reply (Dkt. 160). The parties filed numerous other documents in support of their positions. (Dkts. 128–130, 142, 144, 147, 156, & 161–163) After carefully reviewing the pleadings, motions, declarations, affidavits, depositions, statistical analyses, and other materials in the court file, the Court is presently of the opinion that class certification should be granted.

The Court is mindful of the Supreme Court's warning, in *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974), that "tentative findings made in the absence of established safeguards, may color the subsequent proceed-

ings and place an unfair burden on the defendant." *Id.* at 179, 94 S.Ct. 2140. Accordingly, the Court's decision to certify a class in this cause should not be viewed as a prediction that Plaintiffs will ultimately prevail on the merits of their action, but simply that they have met their burden of establishing the requirements for class certification pursuant to Rule 23, Federal Rules of Civil Procedure. Further, the Court recognizes its duty to modify or vacate its certification order, should the interests of justice so require, as this case progresses. *General Tel. Co. of Southwest v. Falcon,* 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982).

### *Plaintiffs' Claims & Allegations*

#### *Background*

Plaintiffs sue Western Auto Supply Company ("Western") and Advance Stores Company, Inc. ("Advance"), claiming race discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e— 2000e–17 (1994) and 42 U.S.C. § 1981 (1994). The currently operative complaint is the Second Amended Complaint (Dkt. 84). Plaintiffs claim disparate treatment and disparate impact.

The named Plaintiffs are African–American former employees of Western. Plaintiffs worked at a Western retail store located at 34th Street North in St. Petersburg, Florida. As alleged in the Complaint, Plaintiff Briget Drayton began working at Western in 1989. Drayton worked as a cashier during her entire term of employment at Western. Drayton made several unsuccessful attempts to be promoted above the level of cashier. Western never trained Drayton and she lost promotion opportunities because of Western's failure to post job openings and subjective decision-making process. Western paid Drayton less than similarly situated white employees and retaliated against her for complaining about unequal pay. Western subjected Drayton to a racially hostile work environment. Western discharged Drayton in 1998. Drayton filed a charge of discrimination with the EEOC. Under the heading of "Personal Harm," the charge states, in part: "During my employment, I was paid a

salary that was different from other white cashiers in the same employment position. In addition, I inquired about being trained in parts and service, however I was never given this opportunity."

Plaintiff Wanda Mitchell began working at Western in 1985 as a part-time cashier. Mitchell later became a full-time cashier, and then lead cashier. Mitchell also continually tried to be promoted without success. Mitchell lost promotion opportunities because of Western's failure to post job openings and subjective decision-making process. Western paid Mitchell less than similarly situated white employees. Western subjected Mitchell to a racially hostile work environment, and retaliated against her for complaining about the hostile work environment. Western discharged Mitchell in 1998. Mitchell filed a charge of discrimination with the EEOC. Under the heading of "Personal Harm," the charge states, in part: "During my employment, I was paid a salary that was different from other white cashiers in the same employment position. In addition, I was not provided the same employment opportunities as white male employees and was denied promotional opportunities."

Plaintiff Anthony Rich began working at Western in 1995, as an automotive mechanic. Rich continually discussed his interest in pursing promotional opportunities and requested to be considered for promotion. Despite this, Western never gave Rich a promotion or training. Rich lost promotion opportunities because of Western's failure to post job openings and subjective decision-making process. Western paid Rich less than similarly situated white employees and subjected Rich to a racially hostile work environment. Rich left Western in 1997 after continuous attempts to be promoted into a management position. Rich filed a charge of discrimination with the EEOC. Under the heading of "Personal Harm," the charge states, in part: "During my employment, I was paid a salary that was different from other white males in the same employment position. In addition, I was denied promotional opportunities." All of the named Plaintiffs claim discrimination based upon unequal wages, unequal benefits, failure to

train, failure to promote, failure to provide job assignments, and hostile work environment.

In 1994, in areas of the country where there were no Western stores, Western began operating what it called "Parts America" stores. These stores, unlike Western stores sold only parts, accessories, and car care products and had no tire installers, tire specialists, mechanics, cashiers, or service managers. Between 1996 and 1997, Western closed over 200 stores and converted the remaining retail stores to Parts America stores. On November 1, 1998, Advance acquired Western. As of July 1, 1999, Western's Retail Store Division no longer existed. Plaintiffs sue Defendant Advance in this action on the basis of successor liability.[1]

### Proposed Class

Plaintiffs seek class certification pursuant to Rule 23(b)(2) and Rule 23(b)(3), Federal Rules of Civil Procedure. Plaintiffs propose to represent the following class of individuals:

All African–American individuals who are employed or have been employed in Western Auto's retail division, or who have applied for positions within that division, since July 7, 1994.

Plaintiffs propose a two-phase class: In the first phase, the issue of whether Defendants engaged in a pattern or practice of discrimination can be resolved on a class-wide basis. In the second phase, issues relating to individual entitlement to equitable relief can be resolved.

On behalf of the class, Plaintiffs allege an ongoing policy and pattern or practice of racially discriminatory treatment of Western and Advance's African American employees and applicants. In general, Plaintiffs claim that Defendants have a practice of denying African American employees promotional opportunities, management positions, equal pay, full-time status, bonuses, and other benefits on the same terms applied to white employees. Specifically, Plaintiffs allege that Defendants have continuously: maintained a highly racially segregated workforce with white males in management and channels African Americans into lower-paying and non-management positions such as cashier and stock person; segregated their workforce to match the racial make-up of their customer base; maintained a subjective racially-based and/or arbitrary selection process, rather than uniformly posting available positions; utilized job requirements that are arbitrary and applied as a pretext to exclude minorities; failed to consider African Americans for promotions and discouraged African American employees from seeking promotions and management positions; denied African Americans full-time status and affords them fewer hours than white employees; paid African American employees less than similarly situated white male employees; failed to provide training and mentoring to African American employees; and retaliated against African American employees who protested their discriminatory policies. Additionally, Plaintiffs allege that Western's reputation for discrimination deterred African American employees from seeking promotion and management positions, and that Western's elimination of all cashier positions had a disparate impact on African American employees.

### Relief Sought

For themselves and the class, the named Plaintiffs request: a declaratory judgment that Defendants' practices are unlawful; an injunction against Defendants from engaging in the unlawful practices; an order requiring Defendants to institute policies, practices, and affirmative action programs that provide equal employment opportunities for minorities and remedy the effect of past discrimination; an order restoring Plaintiffs and the class to the positions they would occupy but for the unlawful discrimination; an order directing Defendants to adjust the wages and benefits for Plaintiffs and the class; back

---

**1.** Plaintiffs urge, citing *Preyer v. Gulf Tank & Fabricating Co., Inc.*, 826 F.Supp. 1389, 1396–97 (N.D.Fla.1993), that it is proper to impose successor liability on Advance because: (1) Advance had prior notice of Plaintiffs' claims against Western; (2) Western is unable to provide Plaintiffs with the relief requested; and (3) there has been sufficient continuity in the business operations of Western and Advance to justify imposition of liability. (*See* Dkt. 154 at 2–5.)

pay, front pay, job benefits, reinstatement, fees, costs, and interest. For themselves only, the named Plaintiffs request compensatory damages for emotional distress, humiliation, anguish, and embarrassment, and punitive damages.

### Standards for Class Certification

The district court has broad discretion in determining whether to certify a class. See *Forehand v. Florida State Hosp. at Chattahoochee*, 89 F.3d 1562, 1566 (11th Cir. 1996); *Heaven v. Trust Co. Bank*, 118 F.3d 735, 737 (11th Cir.1997); *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566, 1569 (11th Cir.1992). In ruling upon a motion for class certification, the substantive allegations contained in the complaint are accepted as true. *In re Carbon Dioxide Antitrust Litig.*, 149 F.R.D. 229, 232 (M.D.Fla.1993); *In re Catfish Antitrust Litig.*, 826 F.Supp. 1019, 1033 (N.D.Miss.1993). "Courts must remain within [the Rule 23] framework when deciding issues of class certification and cannot venture outside the realm of Rule 23 to consider the merits of the underlying action." *Heimmerman v. First Union Mortgage Co.*, 188 F.R.D. 403, 405 (N.D.Ala.1999); *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 178, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974)("in determining the propriety of a class action, the question is not whether the plaintiff or plaintiffs have stated a cause of action or will prevail on the merits, but rather whether the requirements of Rule 23 are met").

In light of Rule 23(c)(1)'s requirement that a certification decision be made as soon as practicable after the commencement of the action, the standard of proof in support of certification is liberal. *See Binion v. Metropolitan Pier & Expo. Auth.*, 163 F.R.D. 517, 520 (N.D.Ill.1995); *Armstead v. Pingree*, 629 F.Supp. 273, 279 (M.D.Fla.1986). This liberality is tempered by the Court's duty to modify or vacate a certification order as the case progresses. *Binion*, 163 F.R.D. at 520

(citing *General Tel. Co. of Southwest v. Falcon*, 457 U.S. 147, 160, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

Rule 23(a)[2] of the Federal Rules of Civil Procedure sets forth the requirements for class certification, commonly referred to as (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation. *See Falcon*, 457 U.S. at 156, 102 S.Ct. 2364; *Jones v. Firestone Tire and Rubber Co.*, 977 F.2d 527, 534 (11th Cir.1992). "[A] Title VII class action, like any other class action, may only be certified if the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *Falcon*, 457 U.S. at 161, 102 S.Ct. 2364. The burden of proving these prerequisites is on the representative parties seeking class certification. *See Heaven*, 118 F.3d at 737; *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 456 (11th Cir.1996).

If a plaintiff establishes each of these four factors, the court must then determine which, if any, form of class action is appropriate pursuant to Rule 23(b). *See Griffin v. Dugger*, 823 F.2d 1476, 1482 (11th Cir.1987); *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1005 (11th Cir.1997). Plaintiffs argue that the purported class falls within subsections (b)(2) and (b)(3) of Rule 23. Subsection (b)(2) requires that "the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole." Subsection (b)(3) requires that questions of law or fact common to members of the class predominate over any questions affecting individual members of the class, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 117 S.Ct. 2231, 2245–46, 138 L.Ed.2d 689 (1997).

---

2. Rule 23(a) provides:
   One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class,

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

As a threshold matter, the court must determine whether the individually named Plaintiffs have constitutional standing to raise their claims. *See Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 831, 119 S.Ct. 2295, 144 L.Ed.2d 715 (1999); *Griffin*, 823 F.2d at 1482; *Jones*, 977 F.2d at 531. It is not enough that a named plaintiff can establish a case or controversy between himself and the defendant. "Rather, each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one named plaintiff has suffered the injury that gives rise to that claim." *Griffin*, 823 F.2d at 1483. "[A] class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Falcon*, 457 U.S. at 156, 102 S.Ct. 2364 (quoting *East Texas Motor Freight Sys., Inc. v. Rodriguez*, 431 U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)).

### Discussion

#### Standing

As previously discussed, each of the named Plaintiffs alleges he or she was adversely affected by discriminatory practices followed by Western. Plaintiffs. challenge Defendants' corporate-wide policy of employment segregation. This action involves an ongoing violation inasmuch as Western's alleged discriminatory practices have had a continuing adverse impact on African–American former employees, current employees, and applicants. For themselves and the class, Plaintiffs request a declaratory judgment that Defendants' practices are unlawful, an injunction against the Defendants from engaging in the unlawful practices, an order requiring the Defendants to institute policies, practices, and affirmative action programs that provide equal employment opportunities for minorities and remedy the effect of past discrimination; an order restoring the Plaintiffs and class to the positions they would occupy but for the unlawful discrimination; an order directing Defendants to adjust the wages and benefits for the Plaintiffs and class; back pay, front pay, job benefits, reinstatement, fees, costs, and interest. Accordingly, the Court finds that the named Plaintiffs are part of the proposed class and

"possess the same interest and suffered the same injury" as the class members.

Defendants argue that the named Plaintiffs are subject to statute of limitations defenses because certain of the Plaintiffs' claims arose from events that occurred more than 300 days before the filing of their EEOC charges. Even though Plaintiffs Mitchell and Drayton lost their jobs within the 300–day period prior to the filing of their EEOC charges in May, 1998, Defendants argue that they were informed that they would be terminated in 1996, when Western announced its decision to eliminate the cashier position. The Court is not convinced, at this time, that Plaintiffs were so informed. In addition, the Court is not presently convinced that Plaintiffs knew or reasonably should have known about the discriminatory employment policy that gave rise to their claims until Western's Regional Vice–President Don Lockard acknowledged the existence of the policy in his deposition on March 6, 1998. *See* Plaintiffs' Ex. 1 (D. Lockard 3/6/98 deposition at 165–66.) Under equitable tolling, Title VII's statute of limitations period does not start to run until a plaintiff knew or reasonably should have known that he or she was discriminated against. *Carter v. West Publ'g Co.*, 225 F.3d 1258, 1265 (11th Cir.2000). Further, it is clear to this Court that Plaintiffs are challenging Defendants' continuing segregationist employment practices that affected them throughout the period of their employment, rather than a single, discriminatory act. Therefore, this Court finds. that a date cannot be affixed to the impact of Defendants' employment policy. Finally, notwithstanding all of the aforementioned, Plaintiffs correctly assert that it is appropriate to apply Florida's four-year statute of limitations to a multi-state 42 U.S.C. § 1981 class action. After careful consideration, the Court concludes that Plaintiffs have adequately demonstrated their standing to litigate these claims on behalf of the described class.

#### Numerosity

Having established that the named Plaintiffs have standing, the Court must next determine whether the four prerequisites of

Rule 23(a), Federal Rules of Civil Procedure, have been met. Rule 23(a)(1) provides that a class action may be maintained only if the class is so numerous that joinder of all class members is impracticable. There is no yardstick that measures the minimum class members necessary to satisfy the requirements of numerosity. *See Armstead v. Pingree,* 629 F.Supp. 273, 279 (M.D.Fla.1986) (citing *Jones v. Diamond,* 519 F.2d 1090, 1099 (5th Cir. 1975)). Plaintiffs need only make a reasonable estimate of the number of class members. *See In re Amerifirst Secs. Litig.,* 139 F.R.D. 423, 427 (S.D.Fla.1991). Although plaintiffs are not obligated to identify the exact number of class members, they must provide some evidence as to the size of the class. *See Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 930 (11th Cir.1983). The Eleventh Circuit Court of Appeals has held that "while there is no fixed numerosity rule, 'generally less than 21 is inadequate, more than 40 adequate, with numbers between varying according to other factors.'" *Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.)(quoting 3B Moore's Federal Practice ¶ 23.05[1] at n. 7 (1978)), *cert. denied,* 479 U.S. 883, 107 S.Ct. 274, 93 L.Ed.2d 250 (1986). Plaintiffs may not rely on conclusory allegations that joinder is impractical or on speculation of the size to prove numerosity. *See Narwick v. Wexler,* 901 F.Supp. 1275, 1278 (N.D.Ill.1995). Instead, the class "must be adequately defined and clearly ascertainable." *DeBremaecker v. Short,* 433 F.2d 733, 734 (5th Cir.1970). The court may make common sense assumptions in order to find support for numerosity. *Evans,* 696 F.2d at 930.

■ In this case, Plaintiffs seek to certify a class of African–American individuals who are employed or have been employed in Western or Advance's retail divisions nationwide, or who have applied for positions within those divisions, since July 7, 1994. The Court, relying on Plaintiffs' memoranda and supporting exhibits, finds that this proposed class is sufficiently numerous, adequately defined, and ascertainable. Thus, Plaintiffs have fulfilled the "numerosity" requirement.

*Commonality*

■ Next, the Plaintiffs must meet the commonality requirement by specifically identifying questions of law and fact common to the named Plaintiffs and putative class members. Fed.R.Civ.P. 23(a)(2). In *Falcon,* the Supreme Court recognized that "racial discrimination is by definition class discrimination." *See Falcon,* 457 U.S. at 157, 102 S.Ct. 2364. However, the Court further stated:

> [T]he allegation that such discrimination has occurred neither determines whether a class action may be maintained in accordance with Rule 23 nor defines the class that may be certified. Conceptually, there is a wide gap between (a) an individual's claim that he has been denied a promotion on discriminatory grounds, and his otherwise unsupported allegation that the company has a policy of discrimination, and (b) the existence of a class of persons who have suffered the same injury as that individual, such that the individual's claim and the class claims will share common questions of law or fact and that the individual's claim will be typical of the class claims.

*See id.* The commonality requirement must be demonstrated independently of the fact that the members of the proposed plaintiff class are all of the same race. *See Washington,* 959 F.2d at 1569. In *Falcon,* the Supreme Court acknowledged that a single plaintiff can use the discrimination he or she has suffered as a basis for a company-wide class action if that discrimination stems from an identifiable corporate policy that affects all. *See* 457 U.S. 147 at 159 n. 15, 102 S.Ct. 2364, 72 L.Ed.2d 740. Commonality only requires that there be one issue affecting all or a significant number of proposed class members. *See Stewart v. Winter,* 669 F.2d 328, 335 (5th Cir.1982). Where a common scheme is alleged, common questions of law or fact will exist. *See Powers v. Stuart–James Co.,* 707 F.Supp. 499, 502 (M.D.Fla. 1989).

■ As previously discussed, Plaintiffs assert a number of legal and factual commonalities in the Complaint. Plaintiffs are not bringing an across-the-board discrimination case. At the heart of the class' claim in this

case is Defendants' alleged overriding, company-wide policy of employment segregation, namely the staffing of stores according to the racial makeup of their clientele. The policy seemingly affects not only the named Plaintiffs but all other African–American employees and applicants for employment as well. Western's Regional Vice–President Don Lockard acknowledged the existence of this segregationist policy in his deposition. (*See* Plaintiffs' Ex. 1 (D. Lockard 3/6/98 deposition) at 165–66.) Also, Jan Hartzler, the employee at Western's corporate headquarters in charge of planning a "Diversity Initiative," testified in her deposition that senior management rejected plans to implement the Initiative due to ingrained prejudices. (*See* Plaintiff's Ex. 2 (J. Hartzler 3/8/99 deposition) at 109–09 & 118.) The goal of the Diversity Initiative was to promote diversity within Western Auto. (*See id.* at 99–100.) Upon studying the diversity problem at Western, Hartzler realized that African–Americans were underrepresented in all positions, not just management and hence, she sought ways to increase their numbers. (*See id.* at 121.) Hartzler testified that people at all levels of the company did not buy into the program. (*See id.* at 118.) Commonality in this case is also demonstrated by the significant evidence which Plaintiffs submitted to confirm the admitted segregationist policy— statistical evidence of widespread discrimination. This evidence is common to the class as a whole.[3] In light of the foregoing, the Court finds that Plaintiffs have produced sufficient allegations to infer, for class certification purposes, that Western's segregationist policy is the cause of the alleged discrimination. Since one common issue can be sufficient to meet the commonality requirement of Rule 23, the Court finds that Plaintiffs meet the commonality requirement.

### *Typicality*

Plaintiffs must also establish that their claims are typical of the claims of the class members as a whole. Such is the case where a plaintiff's claims "arise from the same event or pattern or practice and are based on the same legal theory" as the claims of the class. *Kornberg v. Carnival Cruise Lines, Inc.,* 741 F.2d 1332, 1337 (11th Cir.1984). The typicality threshold is a low one. *Buford v. H & R Block Tax Servs.,* 168 F.R.D. 340, 351 (S.D.Ga.1996). To satisfy this nexus requirement, it is sufficient that the claims of the named Plaintiffs are substantially similar to the claims of the class, despite factual variations. *See id.; Appleyard v. Wallace,* 754 F.2d 955, 958 (11th Cir.1985). The typicality requirement may be satisfied even if there are substantial factual distinctions between the claims of the named plaintiff and other class members. *Larkin v. Pullman–Standard Div.,* 854 F.2d 1549, 1573 (11th Cir.1988), *vacated on other grounds,* 493 U.S. 929, 110 S.Ct. 316, 107 L.Ed.2d 307 (1989). Ultimately, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Falcon,* 457 U.S. at 158 n. 13, 102 S.Ct. 2364 ("both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence").

The Complaint alleges that each of the named Plaintiffs was affected by discriminatory employment practices followed by Western. Although Plaintiffs may have worked in just one of Defendants' retail stores and each Plaintiff's employment situation may have been unique, Plaintiffs are challenging Defendants' corporate-wide policy of employment segregation. Plaintiffs allege that Defendants have: (1) maintained a highly racially segregated workforce with white males in management and channels African Americans into lower-paying and non-management positions such as cashier and stock person; (2) segregated the workforce to match the racial make-up of its customer base; (3) maintained a subjective racially-based and/or arbitrary selection process, rather than uniformly posting available positions; (4) utilized job requirements that

---

**3.** The parties in this case present a battle of statistical experts. The Court finds it inappropriate to determine the ultimate correctness of either parties' contentions in the context of class certification.

are arbitrary and applied as a pretext to exclude minorities; (5) failed to consider African Americans for promotions and discouraged African American employees from seeking promotions and management positions; (6) denied African Americans full-time status and affords them fewer hours than white employees; (7) paid African American employees less than similarly situated white male employees; (8) failed to provide training and mentoring to African American employees; and (9) retaliated against African American employees who protested against Western's discriminatory policies. Additionally, Plaintiffs allege that Western's reputation for discrimination deterred African American employees from seeking promotion and management positions, and that Western's elimination of all cashier positions had a disparate impact on African American employees. This Court finds that Plaintiffs' claims are sufficiently parallel to the claims of the absent plaintiffs to insure vigorous and full presentation of all potential claims for relief. *See International Molders' Local Union v. Nelson,* 102 F.R.D. 457, 463 (N.D.Cal.1983).

### Adequacy of Representation

■ Finally, Plaintiffs must establish the adequacy of representation. "The adequate representation requirement involves questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and of whether plaintiffs have interests antagonistic to the rest of the class." *Griffin v. Carlin,* 755 F.2d 1516, 1532–33 (11th Cir.1985), *quoted in Shores v. Sklar,* 844 F.2d 1485, 1495 (11th Cir.1988); *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1125 (5th Cir. 1969). The adequacy requirement "serves to uncover conflicts of interest between named parties and the class they seek to represent. A class representative must be part of the class and 'possess the same interest and suffer the same injury' as the class members." *Amchem Products, Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 2250–51, 138 L.Ed.2d 689 (1997) (citing *Falcon,* 457 U.S. at 157–58 n. 13, 102 S.Ct. 2364, and quoting *East Tex. Motor Freight System, Inc. v. Rodriguez,* 431

U.S. 395, 403, 97 S.Ct. 1891, 52 L.Ed.2d 453 (1977)).

This Court is convinced that the class will receive more than adequate representation by counsel of record in this case. Further, the named Plaintiffs are adequate class representatives. Plaintiffs' interests are not antagonistic to the rest of the class. Although Plaintiffs are all former employees of Western, courts have routinely certified classes of both applicants and employees if both groups are alleged to have been impacted by the same employment policy, as in the instant case. *See Butler v. Home Depot, Inc.,* 1996 WL 421436, *4 (N.D.Cal.1996); *Gray v. Greyhound Lines,* 545 F.2d 169, 175–76 (D.C.Cir.1976). *See also Falcon,* 457 U.S. at 159 n. 15, 102 S.Ct. 2364. Also, lower-level employees can represent upper-level employees if they allege that a common discriminatory practice affects all. *See Adames v. Mitsubishi Bank, Ltd.,* 133 F.R.D. 82, 91 (E.D.N.Y.1989). Further, any potential problems inherent in the fact that the proposed class in the present case is comprised of a diverse group of plaintiffs can be remedied by bifurcation of the case into a liability phase and a remedial phase. *See e.g., Int'l Brotherhood of Teamsters v. United States,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977). Therefore, the Court finds that Plaintiffs meet the adequacy of representation requirement.

### Rule 23(b)(2)

■ Civil rights cases against parties charged with unlawful, class discrimination are prime examples of Rule 23(b)(2) actions. *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 117 S.Ct. 2231, 138 L.Ed.2d 689 (1997); *see also Penson v. Terminal Transp. Co.,* 634 F.2d 989, 993 (5th Cir.1981) (Rule 23(b)(2) was "intended primarily to facilitate civil rights actions.") Indeed, because Rule 23(b)(2) was crafted in part to effectuate civil rights class actions, courts should construe the requirements of Rule 23 liberally in civil rights cases. *See DuPree v. E.J. Brach & Sons,* 77 F.R.D. 3, 7 (N.D.Ill.1977). Rule 23(b)(2) first requires that the defendant have acted in a manner generally applicable to the class, yet "[t]he requirement that the

defendant act on grounds generally applicable to the 23(b)(2) class is encompassed in the commonality requirement of Rule 23(a)." *Shores v. Publix Super Markets, Inc.*, 1996 WL 407850 at *8 (M.D.Fla. Mar.1996). The Court, having already found that Plaintiffs have demonstrated commonality, likewise finds that Plaintiffs have satisfied this first 23(b)(2) requirement. Rule 23(b)(2) also applies when the class seeks primarily injunctive or declaratory relief. Here, all the relief requested on behalf of the class is equitable in nature. Thus, the class satisfies Rule 23(b)(2).

### Rule 23(b)(3)

■ In the alternative, Plaintiffs request certification under Rule 23(b)(3).[4] Rule 23(b)(3) differs from 23(b)(2) in that (b)(3) additionally requires that class action treatment be superior to individualized litigation and that questions common to the class predominate over those affecting only individualized class members. The Eleventh Circuit Court of Appeals found, in *Rutstein v. Avis Rent-A-Car Systems, Inc.*, 211 F.3d 1228 (11th Cir.2000), that common questions will in fact predominate in employment discrimination cases which are not complicated by claims for compensatory and punitive damages. Thus, the Court finds that this class satisfies Rule 23(b)(3).

Accordingly, it is ordered:

1. That Plaintiffs' Motion for Class Certification (Dkt. 126) is **granted**.

2. That this action will be bifurcated into separate phases. In the first phase, the issue of whether Defendants engaged in a pattern or practice of discrimination will be resolved on a class-wide basis. In the second phase, issues relating to individual entitlement to equitable relief will be resolved.

3. The parties shall file an Amended Case Management Report within 30 days from the date of this Order.

---

4. In this Circuit, as between Rule 23(b)(2) and Rule 23(b)(3) classes, (b)(2) classes are preferred.

*Bing v. Roadway Express, Inc.*, 485 F.2d 441, 447 (5th Cir.1973).