Gloria **FAULK**, et al., Plaintiffs,

v.

**HOME OIL COMPANY, INC.,**
et al., Defendants.

No. Civ.A. 96–A–1384–N.

United States District Court,
M.D. Alabama,
Northern Division.

March 9, 1999.

Robert F. Childs, Jr., Ann C. Robertson, Maury Steven Weiner, Gordon, Silberman, Wiggins & Childs, Birmingham, AL, Bobbie S. Crook, Dothan, AL, for plaintiffs.

Maury Steven Weiner, Gordon, Silberman, Wiggins & Childs, for Kent Grubbs.

Wesley C. Redmond, Frank S. James, III, Berkowitz, Lefkovits, Isom & Kushner, Birmingham, AL, for defendant.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, Chief Judge.

### I. INTRODUCTION

Before the court is a Motion for Class Certification filed by the Plaintiffs on June 1, 1998. The Plaintiffs originally filed their Complaint in this case on September 4, 1996. The Plaintiffs allege that Home Oil Company, Inc. ("Home Oil") discriminated against them on the basis of race in violation of 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* They seek injunctive, declaratory, and monetary relief, including compensatory and punitive damages.

The Plaintiffs seek to certify a class composed of:

African Americans who (a) applied or, would have applied in the absence of the discriminatory practices challenged herein, for positions with the defendant; (b) were so employed and who applied or would have applied for a promotion/transfers in the absence of the discriminatory practices challenged herein; (c) African Americans who were subjected to a racially hostile work environment; or (d) were adversely affected by the discriminatory practices challenged herein.

Compl. ¶ 19. In their brief in support of class certification, the Plaintiffs limited the

proposed class to African–American applicants and employees at Home Oil's Hobo Pantry Food Stores from September 4, 1994 to the present, although the Complaint has not been amended to that effect.

For reasons to be discussed, the Motion for Class Certification is due to be DENIED.

## II. *STANDARD FOR CLASS CERTIFICATION*

■ The question of class certification is a procedural one distinct from the merits of the action. *Garcia v. Gloor*, 618 F.2d 264 (5th Cir.1980).[1] In deciding whether to certify a class, a district court has broad discretion. *Washington v. Brown & Williamson Tobacco Corp.*, 959 F.2d 1566 (11th Cir.1992). Although a district court is not to determine the merits of a case at the certification stage, sometimes "it may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *Washington*, 959 F.2d at 1570 n. 11.

■ A class action may only be certified if the court is satisfied, after a rigorous analysis, that the prerequisites of Federal Rule of Civil Procedure 23 have been satisfied. *Gilchrist v. Bolger*, 733 F.2d 1551, 1555 (11th Cir.1984). "A class action may be maintained only when it satisfies all the requirements of Fed.R. of Civ.Pro. 23(a) and at least one of the alternative requirements of Rule 23(b)." *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999 (11th Cir.1997). A court must evaluate whether the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation. Furthermore, the court must determine whether the action may be maintained as one of the classes under Rule 23(b). The party seeking to maintain the class action bears the burden of demonstrating that all prerequisites to class certification have been satisfied. *Walker v. Jim Dandy Co.*, 747 F.2d 1360, 1363 (11th Cir.1984).

1. In *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (11th Cir.1981) (*en banc*), the Eleventh Circuit adopted as binding precedent the decisions of the former Fifth Circuit.

## III. *FACTS*

The submissions of the parties establish the following facts:

### The Parties

Home Oil is a distributor of petroleum products and goods and services with its central office located at Ashford, Alabama. Its retail division operates gas stations and retail convenience stores. The retail convenience stores are called Hobo Pantry Food Stores. Presently, Home Oil operates twenty-one such stores in south Alabama and Florida. The shareholders of Home Oil, who are all white, are members of the same family. Tom Shirley is Chairman of the Board. His wife, Sarah Jo Shirley, is Treasurer. Their son, Tim Shirley, is the President of the company, and another son, Andy Shirley, is the Executive Vice President. Their daughter, Dawn Johnson, is the Secretary.

Jim Quintero, who is Native American, is the Vice President/Director of Retail for Home Oil. He has been employed with Home Oil since January of 1990 and works at the central corporate office. During the time period relevant to this case, Jim Quintero was responsible for supervising the day-to-day operation of the Hobo Pantry stores. Dawn Johnson serves as Mr. Quintero's assistant.

The Plaintiffs are employees, former employees, or rejected applicants for employment at Home Oil's Hobo Pantry Food Stores. In this motion, several of the named African–American Plaintiffs seek to act as class representatives.[2] Plaintiffs Gloria Faulk and Emma McLeod are current employees of Home Oil. Plaintiffs Cassandra Hodo, Robert Condrey, Ella Faye Evans, Sherrie Cunningham, and Kent Grubbs are former employees of Home Oil. Plaintiffs Frances Myles and Tommy Grubbs applied for employment with Home Oil but were not hired.

### Policy and Procedure Manual

The Policy and Procedure Manual for the Hobo Pantry Stores has been in effect in its

2. The Plaintiffs have indicated that they no longer seek to have two named African–American plaintiffs, Harvette Culver and Pamela R. Humphrey, act as class representatives.

present form since November 1992. It is a single manual applicable to all stores. Regarding the procedure for employee selection and hiring, it makes reference to an application for employment, reference checks, and an interview. It also states in part:

Recruiting for nonprofessionals/management will be limited to walk-ins, advertisements, and employment agency referrals.... Your best applicants normally come from your customers or friends of your employees.

....

The decision to hire or not to hire an individual is one of the most difficult and critical decisions we make as supervisors or managers. The selection procedure was developed to assist you in organizing your information about the applicant so you could make the best possible decision. However, it does not make the decision. You and your supervisor do. Your recommendation for employment should be reviewed and approved by your supervisor who should also sign the new hire paperwork.

Tim Shirley testified in his deposition that the term "supervisor" in the employee hiring section of the Policy and Procedure Manual referred to Jim Quintero. Shirley Dep. at 93. Mr. Shirley further acknowledged that both the store manager and Mr. Quintero are required to sign the paperwork when a new employee is hired for Hobo Pantry. Id. at 240. He stated that as far as he was aware, the policy manual was an accurate reflection of the employee selection and hiring procedure that has been in effect for Home Oil and Hobo Pantry since November of 1992. With regard to publicizing vacancies, Mr. Shirley stated that he doesn't know if Home Oil used any form of advertisement other than point of sale advertisements and word of mouth. Id. at 234. The policy manual makes no reference to any separate promotion procedure.

## Hiring Procedure

When an applicant applies for a position as a sales associate, that individual's application is forwarded to Betty Watford, the Office Manager, at the central corporate office. Ms. Watford reviews applications for accura-

cy and checks references. If the references and the application are accurate, Ms. Watford returns the application to the individual store managers. Individual store managers interview applicants. Quintero Dep. at 70–71. The procedure for hiring store managers is the same, except that Mr. Quintero or Ms. Johnson interviews potential store managers.

Mr. Quintero testified that Home Oil does not use a method of interviewing whereby the same questions are asked of each applicant, nor does it provide its managers with an acceptable list of questions. Quintero Dep. at 81–83. According to Mr. Quintero, Home Oil conducted training sessions for store managers on interview techniques and the value of role play. Id. at 153. Mr. Quintero stated that applicants were required to be twenty-one years of age, and the store managers should look for prior experience and the ability to use a calculator, read and write, meet customers, use a four-step process in greeting customers, conduct transactions, stock a cooler, and use suggestive selling. Id. at 86, 153–54; Quintero Aff. Mr. Quintero stated in his affidavit that he considers these to be objective criteria, though he acknowledged in his deposition that the interview process requires some subjective judgment. Quintero Dep. at 158.

It is undisputed that Jim Quintero and Dawn Johnson hire store managers, are involved with rehires, and conduct interviews of applicants for lower-level positions if the store manager is new or absent for some reason. The parties dispute the independence of store managers with regard to the hiring and promotion of lower-level employees. The Defendants assert that individual store managers make all decisions concerning hiring, promotion, and termination, other than rehires, without approval from Jim Quintero or Dawn Johnson. The Plaintiffs assert that Jim Quintero exercised centralized control over the hiring and promotion of all Hobo Pantry employees.

## Promotion

Tim Shirley testified that Home Oil first tries to promote from within. According to Mr. Shirley and Mr. Quintero, Home Oil asks its employees to let their immediate supervi-

sors know if they have an interest in promotion. Then the company relays that information to the appropriate department heads. He is not aware of any written documentation incorporating that policy. To Mr. Shirley's knowledge, the company does not keep records indicating which employees expressed interest in promotion, nor is there a formalized posting and bidding procedure. Shirley Dep. at 127–132.

Mr. Quintero stated that individuals who have demonstrated a willingness to be promoted are either given training or recognized as individuals who want to be promoted, and opportunities are discussed among managers when vacancies exist. Mr. Quintero acknowledged that store managers do not have to consider employees who have expressed an interest in promotion before making the hiring decision. Quintero Dep. at 151–52.

In his affidavit, Mr. Quintero stated that the most important criterion in promoting individuals to an assistant manager position is the individual's ability to perform the reports required of the position. In addition, an employee must be able to perform the manager's functions. An employee's performance and experience as assistant manager are primary considerations in promoting an employee to store manager. Mr. Quintero determines whether an employee can perform the manager functions, and he looks to the individual's past experience. Mr. Quintero further stated that store managers make all decisions regarding hiring and promotion of individuals to the positions of cashiers, deli managers, and assistant managers. As discussed below, the Plaintiffs dispute Mr. Quintero's statement.

## IV. DISCUSSION

The Plaintiffs seek certification of a class of Home Oil applicants and employees to challenge the "systemic discrimination" which they allege deprived African–Americans of employment and promotion opportunities and perpetuated a hostile working environment. The Plaintiffs bring this action under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964.

## A. Permissible Scope of Plaintiffs' Title VII Claims

At the outset, the Defendants contend that the Plaintiffs have not met the procedural prerequisites for class certification of their Title VII claims. The procedural prerequisites are as follows:

One who seeks to represent a class in a private Title VII suit must have standing to raise the claims of the class and must satisfy the procedural requirements of Title VII. Title VII requires a plaintiff to file a charge with the EEOC within 180 days of the alleged unfair labor practice. Pursuant to the "singlefiling rule," "[a]s long as at least one named plaintiff timely filed an EEOC charge, the precondition to a Title VII action is met for all other named plaintiffs and class members." This rule encompasses two essential requirements: "First, at least one plaintiff must have timely filed an EEOC complaint that is not otherwise defective.... Second, the individual claims of the filing and non-filing plaintiffs must have arisen out of similar discriminatory treatment in the same time frame."

*Jones v. Firestone Tire & Rubber Co.*, 977 F.2d 527, 531 (11th Cir.1992) (citations omitted).

To determine whether the claims of filing and non-filing plaintiffs arose out of similar discriminatory treatment, the rule in this circuit provides, "[T]he allegations in a judicial complaint filed pursuant to Title VII may encompass any kind of discrimination like or related to the allegations contained in the charge and growing out of such allegation during the pendency of the case before the Commission." *Evans v. U.S. Pipe & Foundry Co.*, 696 F.2d 925, 928 (11th Cir.1983) (quoting *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 466 (5th Cir.1970)). "The starting point for determining the permissible scope of the judicial complaint is the EEOC charge and investigation." *Id.* at 929.

In *Evans*, a plaintiff had filed an EEOC charge against his former employer alleging that the company failed to promote him, that he was discriminated against with respect to unspecified terms and conditions of employment, that he was harassed on the job, and

that his union failed to represent him adequately. *See id.* at 926. He sought certification of a class of all black employees of the defendant company and all black members of the defendant union "who may have been discriminated against in initial job assignments, promotions, reductions-in-force, discipline and terminations." *Id.* at 926 n. 3. The district court denied class certification, finding that the putative class included members whose claims were beyond the scope of the EEOC charge. The court perceived the EEOC charge as encompassing only claims of racial discrimination in promotions, job harassment, and union representation. *See id.* at 928. The court further held that a smaller class which the plaintiff properly could represent had not been shown to meet the numerosity requirement of Rule 23.

The Eleventh Circuit found no error in the district court's determination that the class contained members whose claims were beyond the scope of the EEOC charge. *See id.* at 929. Based on the record before it, the court found that the appellant's "concept of widespread discrimination rooted in the subjective decisionmaking of the white supervisory staff was not a part of the investigation by the Commission." *Id.* The court did, however, find that the evidence was sufficient to conditionally certify a class of employees who had been discriminated against through defendant's promotion practices, a claim clearly presented in the EEOC charge. *See id.* at 930.

In the present case, the Defendants have identified two plaintiffs who filed EEOC charges. According to the Defendants, Plaintiff Harvette Culver asserted in her EEOC charge that she was discharged because of her race and in retaliation for her opposition to discipline meted out to other black employees. Plaintiff Robert Condrey alleged that he was discharged because of his race. The Plaintiffs have made no showing to the contrary, nor have they shown that the EEOC investigation actually covered the claims alleged in this lawsuit. Even under the rule espoused in this circuit, the named Plaintiffs' EEOC charges cannot support the broad claims asserted by the Plaintiffs in this action. A claim of discriminatory discharge is not sufficient to put the EEOC on notice to investigate the "widespread discrimination rooted in the subjective decisionmaking of the white supervisory staff" alleged by the Plaintiffs. Thus, class certification for the Plaintiffs' Title VII claims is improper.

## B. Plaintiffs' Standing Under § 1981

Though the Plaintiffs' Title VII claims cannot be certified, the court must assess whether the Plaintiffs are entitled to certification of their section 1981 claims. 42 U.S.C. § 1981 provides that all citizens shall have the same right to "make and enforce contracts." The aim of the statute is to remove the impediment of discrimination from a minority citizen's ability to participate fully and equally in the marketplace. *Brown v. American Honda Motor Co.*, 939 F.2d 946, 949 (11th Cir.1991). Section 1981 requires proof of intentional discrimination. *Id.* (citing *General Building Contractors Association v. Pennsylvania*, 458 U.S. 375, 391, 102 S.Ct. 3141, 3150, 73 L.Ed.2d 835 (1982); *Washington v. Davis*, 426 U.S. 229, 246–48, 96 S.Ct. 2040, 2050–52, 48 L.Ed.2d 597 (1976)). The filing of a Title VII charge and resort to Title VII's administrative machinery are not prerequisites for the institution of a section 1981 action. *Johnson v. Railway Express Agency, Inc.*, 421 U.S. 454, 459–61, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975).

The Defendants contend that the Plaintiffs do not have standing to assert claims under section 1981 because they are at-will employees. This court expressly rejected that argument in *Lane v. Ogden Entertainment, Inc.*, 13 F.Supp.2d 1261, 1272 (M.D.Ala.1998) (Albritton, J.), wherein it stated:

The court believes that Defendant has confused the issue of whether the employee has a "contract" in the sense used in labor law—i.e., employment for an agreed duration, with certain benefits and protections—with the issue of whether there is a contract between an employer and an at-will employee at all. Even at-will employees have some sort of contract, in the broader legal sense of that term, with their employer. Even though the at-will employee could not file a breach of contract claim for being fired (since he has no pro-

tections), the at-will employee would be able to file a breach of contract claim if, for example, he was not paid the correct amount. "Contract" is used in § 1981 in its basic legal meaning, not a specialized labor law meaning.

In a recent case adopting this position, the Fifth Circuit noted, "To hold that at-will employees have no right of action under § 1981 would effectively eviscerate the very protection that Congress expressly intended to install for minority employees, especially those who, by virtue of working for small businesses, are not protected by Title VII." *Fadeyi v. Planned Parenthood Assoc. of Lubbock,* 160 F.3d 1048, 1050 (5th cir.1998). The cases cited by the Defendants do not persuade this court to reverse its position. The Plaintiffs have standing to present their section 1981 claims.

## C. *General Telephone Co. of the Southwest v. Falcon*

In *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982), the Supreme Court held that an employment discrimination claimant seeking class certification must satisfy the procedural prerequisites for class actions, and an allegation of discriminatory treatment is not by itself sufficient to support an across-the-board attack. The Defendants cite *Falcon* for the proposition that a class consisting of both applicants and employees is improper. According to the Defendants, the Plaintiffs must affirmatively establish proper subclasses.

In *Falcon,* the district court certified a class consisting of both Mexican–American employees who had not been promoted and Mexican–American applicants who had not been hired. The Fifth Circuit held that class certification was proper under its rule permitting any victim of racial discrimination in employment to maintain an "across-the-board" attack on all of her employer's practices which allegedly discriminated on the basis of race. The Supreme Court reversed. The court held that the district court erred by presuming that the respondent's claim was typical of other claims by Mexican–American employees absent any specific pre-

sentation identifying common questions of law or fact. *Id.* at 158, 102 S.Ct. 2364.

The Court did not, as the Defendants suggest, foreclose the possibility of a class action consisting of both applicants and employees. Nor did the Court affirmatively require that such a class be divided into subclasses. In a footnote, the Court elaborated on when class certification could be appropriate:

> If petitioner used a biased testing procedure to evaluate both applicants for employment and incumbent employees, a class action on behalf of every applicant or employee who might have been prejudiced by the test clearly would satisfy the commonality and typicality requirements of Rule 23(a). Significant proof that an employer operated under a general policy of discrimination conceivably could justify a class of both applicants and employees if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes. In this regard it is noteworthy that Title VII prohibits discriminatory employment *practices,* not an abstract policy of discrimination. The mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer.

*Id.* at 159 n. 15, 102 S.Ct. 2364. As the Eleventh Circuit noted, "The situations the Supreme Court identified in footnote fifteen can be thought of as exceptions to the general rule that applicants and incumbent employees cannot share the same class." *Griffin v. Dugger,* 823 F.2d 1476, 1487 (11th Cir.1987). Thus, a claimant could make a showing sufficient to merit certification of a class consisting of applicants who were not hired and employees who were not promoted.

### Rule 23(a) Prerequisites

Having determined that the Plaintiffs have standing to assert claims under section 1981, and that they may seek certification of a class of all African–American applicants and employees at Home Oil's Hobo Pantry Food

Stores, the court must determine whether class certification of those claims is appropriate. A court first must evaluate whether the four requirements of Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation. Federal Rule of Civil Procedure 23(a) provides:

> (a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

There appears to be some question after *Falcon* regarding the quantum of proof required for the Plaintiffs to establish the rule 23(a) prerequisites. The *Falcon* footnote suggests that "significant proof" is necessary to justify such a class. Yet a district court cannot conduct "a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). A leading treatise states, "It is unlikely that the Supreme Court would have reversed itself *sub silentio,* in spite of its use of significant proof language. The plaintiff bears the burden of providing sufficient factual information for the court to form a reasonable judgment on the class issues." 5 Herbert Newberg & Alba Conte, *Newberg on Class Actions,* § 24.13 (3d Ed.1992).

▮ In a post-*Falcon* case, the Eleventh Circuit affirmed a district court's denial of class certification, noting that the district court "correctly concluded ... that while plaintiffs need not prove the merits of their claims at this stage, they must provide more than bare allegations that they satisfy the requirements of Rule 23 for class certification. Plaintiffs must show some nexus with the alleged class." *Morrison v. Booth,* 763 F.2d 1366, 1371 (11th Cir.1985). Furthermore, the decision whether to certify a class is entrusted to the discretion of the court.

*Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566 (11th Cir.1992).

### 1. Numerosity

▮ The first prerequisite under Rule 23(a) is that the class must be so numerous that joinder of all members is impracticable. The Eleventh Circuit has stated, "Although mere allegations of numerosity are insufficient to meet this prerequisite, a plaintiff need not show the precise number of members in the class. Furthermore, the relevance of the numerosity requirement to class certification may in appropriate cases be less significant where in fact class wide discrimination has been alleged. Finally, at least one court has recognized that where the numerosity question is a close one, a balance should be struck in favor of a finding of numerosity, since the court has the option to decertify pursuant to Rule 23(c)(1)." *Evans v. U.S. Pipe & Foundry Co.,* 696 F.2d 925, 930 (11th Cir.1983) (citations omitted).

Here the Plaintiffs have identified 164 employees of Home Oil and 31 African–American applicants who potentially were affected by the alleged discriminatory policies regarding hiring and promotion. Such a class is large enough to satisfy the numerosity requirement and render joinder impracticable. *See, e.g., Cox v. American Cast Iron Pipe Co.,* 784 F.2d 1546, 1553 (11th Cir.1986).

The Defendants contend that the numerosity requirement has not been satisfied because the Plaintiffs' statistical evidence reflects that only nine additional management positions should have gone to African–Americans. In *Boykin v. Georgia–Pacific Corp.,* 706 F.2d 1384 (5th Cir.1983), the Fifth Circuit addressed a similar contention in a case alleging discrimination in promotion practices. In that case, the defendant contested numerosity by referring to statistical analysis which suggested that African–Americans should have occupied only twenty more positions. The Plaintiffs sought certification of a class of 317 past and present African–American employees. The court held, "This is a case where employees were not promoted. All 317 individuals have a stake in that claim. There is no way to limit the action to twenty persons, as defendant suggests, because it is

impossible to identify those persons who would have been hired but for the discrimination which occurred." *Id.* at 1386–87. Because the Plaintiffs in the present case attack the Defendants' hiring and promotion *practices,* this court agrees that the Defendants' contention is without merit.

## 2. Commonality and Typicality

 The Defendants vigorously contest the Plaintiffs' evidence supporting the commonality and typicality requirements in this case. The commonality and typicality requirements of Rule 23(a) tend to merge. *Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. 2364. In order to meet the requisites for commonality, it is plaintiffs' burden to demonstrate that "the issues in a class action that are subject to generalized proof and thus applicable to the class as a whole ... predominate over those issues that are subject only to individualized proof." *Nichols v. Mobile Board of Realtors, Inc.,* 675 F.2d 671, 676 (5th Cir.1982). The prosecution of disparate treatment claims, "while not dispositive, weighs against finding the commonality and typicality required by Rule 23." *Washington v. Brown & Williamson Tobacco Corp.,* 959 F.2d 1566, 1570 n. 10 (11th Cir.1992).

The Plaintiffs take the position that Home Oil's selection policies, practices, and procedures and the work environment affect employees and applicants in the same way. They point to subjective decisionmaking in hiring and promotion, lack of a structured interview process, lack of posting and bidding procedures, and use of word-of-mouth publication as objectionable employment practices common to the purported class. The Plaintiffs assert that Jim Quintero adopted the employment practices used at the Hobo Pantry stores to prevent the hiring and promotion of African–Americans into management positions.

The Defendants counter by claiming that individual store managers make decisions regarding hiring of cashiers, deli managers, and assistant managers. Thus, the lack of a centralized decisionmaking process will necessitate individual inquiry into the Plaintiffs' claims. Additionally, the Defendants contend that Home Oil does not use an entirely subjective decisionmaking process, and that the named Plaintiffs' claims are atypical of the class they seek to represent.

 Turning first to the Plaintiffs' hiring and promotion claims, the parties correctly note that the locus of decisionmaking authority is an important consideration when determining whether class certification is appropriate for systemic discrimination claims involving multiple facilities. *See, e.g.,* 2 Barbara Lindemann & Paul Grossman, *Employment Discrimination Law,* 1598 ("Even [in disparate treatment cases] evidence of centralized policy or decisionmaking can support certification of classes encompassing geographically separate facilities or different business units.") (footnotes omitted); 5 *Newberg on Class Actions,* § 24.21 ("[A]n absence of supported allegations by the plaintiff of centralized employment decisionmaking or a showing of decentralization by the defendant may result in a denial or reversal of class certification."). Both parties have presented substantial evidence in support of their positions.

The Plaintiffs submitted testimony from several named Plaintiffs who were Hobo Pantry store managers. Esther West stated, "Every time Jim Quintero would come in the store, I asked him how come I couldn't hire a black person in my store, and he said that there was—all of them was niggers and they would not do nothing but thieve and steal and sit on their behind. He said they would steal you blind." West Dep. at 100. Virginia Tatum testified that Quintero communicated to her that she could not hire any more blacks at her store in Ashford. Tatum Dep. at 152–53. Norma Kinsman stated that, although "managers still could have their say-so," Jim Quintero and Dawn Johnson were supposed to do the hiring. Kinsman Dep. at 167–68. She further stated that Quintero told her that Home Oil wanted to "clean up" the store where she worked, implying that white customers would be afraid to shop at a store with so many black employees. *Id.* at 34–36. Cassandra Hodo claimed that while she was store manager she did not have authority to hire or fire individuals. Hodo Dep. at 72. Kim Whitehurst stated that Jim Quintero informed her that he didn't want a

certain black employee dealing with money, that he'd never seen an honest black person, and that he didn't want any blacks on the second shift. Whitehurst Dep. at 53–58.

In addition to the testimony of these former store managers, the Plaintiffs submitted the testimony of Mary Grover, a former Home Oil employee who worked in the corporate office and screened applications. Ms. Grover stated that Quintero made the following comments to her: 1) "I don't hire niggers, and when you force me to, I get rid of them;" 2) he would not hire blacks to work at the store on highway 52 because whites wouldn't shop there; and 3) he would not let blacks be store managers because he believed them incapable of performing the paperwork. Grover Dep. at 83, 87–89. She also testified that some store managers told her that Quintero would not allow them to hire any more black applicants. See id. at 170–71, 191–200.

Furthermore, the Policy and Procedure Manual for the Hobo Pantry Stores states that the store manager and her supervisor do the hiring. According to the manual, a store manager's recommendation for employment should be reviewed and approved by her supervisor. The president of Home Oil, Tim Shirley, stated that as far as he was aware, the policy manual was an accurate reflection of the employee selection and hiring procedure. Shirley Dep. at 231.

The Defendants offered evidence to the contrary. Jim Quintero stated that store managers make the decision to hire or not to hire an applicant based on the interview. The store manager will contact either Jim Quintero or Dawn Johnson for approval only if the salary for the new hire is different than minimum wage or relative to the pay rate in the store. Quintero Dep. at 71. The Defendants also submitted affidavits from twelve store managers, all stating, "During the entire time that I have been a store manager, I have made all decisions regarding the hiring and promotion of persons—other than those previously employed by Home Oil—for the

positions of sales associate, assistant manager, deli worker, and deli manager for the stores which I have managed. Neither Jim Quintero nor anyone else at Home Oil has been involved in such decisions. Only with respect to the hiring of persons previously employed by Home Oil do I have to obtain Jim Quintero's approval." Defendants' Exhibits 5–16 ¶ 4.[3]

In *Orlowski v. Dominick's Finer Foods*, 172 F.R.D. 370 (N.D.Ill.1997), a fellow district court confronted a similar dispute over centralized decision-making in promotions. The plaintiffs challenging the defendant's promotion practices sought certification of a subclass of former and present female employees. They presented deposition testimony from two of the defendant's central office employees indicating that central office staff in coordination with employees at individual stores made hiring decisions above the clerk level. The defendant rebutted this evidence with declarations from its store managers and depositions from members of its central office staff supporting its argument that store managers made employment decisions at the defendant's stores, rendering the personnel process highly decentralized. The court ruled, "[I]t is apparent that the extent to which promotional decisions are currently centralized is disputed. To resolve this dispute would be to address the merits, which is inappropriate at this juncture." *Id.* at 373–74.

This court agrees that making a determination at this stage on whether Home Oil used centralized decisionmaking would be improper in the context of this case. The Plaintiffs have offered substantial evidence supporting their assertion that Jim Quintero exercised control over the hiring process for all employees at the Hobo Pantry stores. They have shown a factual and legal "nexus" between their claims and the claims of the class.

Next, the Defendants contend that Home Oil utilized objective criteria in making hiring

---

**3.** Plaintiffs assert that the deposition testimony of these store managers often contradicts their sworn declarations. On review of the evidence, it appears that many of the passages which the Plaintiffs cite reflect that these store managers occasionally consulted their supervisors, Jim Quintero and Dawn Johnson. The court finds it unnecessary to resolve the dispute over the true meaning of these statements, given the other evidence supporting the Plaintiffs' position.

and promotion decisions. Thus, the Plaintiffs' claims would not fall within the portion of *Falcon* footnote fifteen which states that a class consisting of applicants and employees could be justified "if the discrimination manifested itself in hiring and promotion practices in the same general fashion, such as through entirely subjective decisionmaking processes." *Falcon*, 457 U.S. at 159 n. 15, 102 S.Ct. 2364. In *Griffin v. Dugger*, 823 F.2d 1476, 1490–91 (11th Cir.1987), the Eleventh Circuit discussed the phrase "entirely subjective decisionmaking processes" as follows:

> By qualifying "subjective decisionmaking processes" with "entirely," the Court implied that an employer's general policy of discrimination manifested, for example, by an objective hiring practice and by a subjective promotion practice would not be discrimination operating in "the same general fashion" sufficient to justify a class of both applicants and employees.

> The FDOC's decisionmaking process for hiring correctional officers is objective: applicants must hold a high school diploma or a general equivalency diploma and must pass the written correctional officer examination. In contrast, the FDOC's decisionmaking process for promoting correctional officers, and other employees, is subjective: applicants for promotion need not hold advanced degrees or pass any additional examinations; correctional officers are promoted on the basis of their performance as viewed by their superiors. The case before us is not one that implicates Falcon's footnote fifteen.

Despite the Defendants' insistence that it uses objective criteria and teaches its managers to be as objective as possible, the only practice which the Defendants identified as influencing its hiring decisions is an interview. The store managers have discretion as to how to conduct the interview. Neither the policy manual nor the Home Oil employees who were deposed make reference to any other procedure to assist the decisionmakers in determining which applicants should be hired or which employees should be promoted. Applicants and employees at Home Oil are hired or promoted on the basis of their ability "as viewed by their superiors." This is not an "objective" decisionmaking process. Home Oil's hiring and promotion practices would fall within the scope of *Falcon* footnote fifteen.

Defendants also assert that the Plaintiffs' claims are not typical of the class. Specifically, Defendants point to evidence that (1) the applications of Tommy Grubbs and Frances Myles were thrown in the trash by a store manager; (2) Sherrie Cunningham wanted to be promoted but wouldn't say that she didn't get the deli manager's position because of her race; (3) Kent Grubbs had no desire to be promoted; (4) though Robert Condrey testified that he may have taken a promotion had one been offered, he was a part-time employee who never asked to work full-time and never sought a higher position; (5) Gloria Faulk actually requested a promotion and offered no testimony to intimate that her nonpromotion was affected by Home Oil's failure to post open positions; (6) Emma Faye McLeod offered no evidence to suggest that Dawn Johnson's response that it wasn't the "right time" was race-based when Emma Faye McLeod asked for a promotion to store manager; and (7) Cassandra Hodo and Ella Faye Evans were store managers and thus could not be proper class representatives.

■ Individual class members do not have to be identically situated to meet the requirements of commonality and typicality. In *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir.1986), the Eleventh Circuit determined that a trial judge erred by decertifying a class after concluding that the claims of class members lacked commonality.[4] The trial court found varying allegations of discrimination in salary, promotion, medical coverage, training, job classification, and fringe benefits. In addition, some plaintiffs had asserted either that there was no discrimination or no opinion about discrimination. The court concluded that the class

---

4. The Eleventh Circuit also found that the trial court had erroneously relied on the plaintiffs' answers to interrogatories which were used improperly to reduce class size. The circuit court addressed the commonality issue assuming that the interrogatories had been properly allowed.

members cited only individual acts of discrimination, not a policy of discrimination.

Addressing the trial court's findings, the Eleventh Circuit stated:

> [T]he responses of class members to those questions still represented not legal claims, but unformed and unselfconsciously presented impressions. To determine what legal claims plaintiffs allege, a judge must look not to defendant's interrogatories but to plaintiffs' complaint.
>
> At best, the trial judge could only conclude from these answers that some specific claims might not be held by all class members. But Rule 23 does not require that all the questions of law and fact raised by the dispute be common.
>
> The claims actually litigated in the suit must simply be those fairly represented by the named plaintiffs. Nor is it clear from the interrogatories that plaintiffs allege no policy of discrimination; indeed, the "individual acts" they cite could very likely be manifestations of such a policy. Among plaintiffs, allegations of similar discriminatory employment practices, such as ... [the] use of entirely subjective personnel processes that operated to discriminate, would satisfy the commonality and typicality requirements of Rule 23(a).

*Id.* (citations omitted).

In *Wynn v. Dixieland Food Stores, Inc.,* 125 F.R.D. 696 (M.D.Ala.1989) (Dubina, J.), this court certified a class encompassing claims of racial discrimination in hiring, promotion, and termination. The plaintiffs were employees of the defendant who had been denied promotions and terminated from their employment with the defendant. The defendant operated forty-eight Piggly Wiggly stores in four states. Each store had a store manager with full and independent authority to hire, transfer, discipline, and discharge part-time employees. The store managers did not have independent authority to fill full-time positions or terminate full-time employees. The court found "the most telling testimony" to be that of two former employees who testified that one of the defendant's top management employees had made racially derogatory statements at management meetings, including: 1) he would not hire another black until the government made him; 2) the store managers should not hire blacks to handle money; and 3) the store managers should not hire black cashiers because they steal. *Id.* at 698.

On the issues of commonality and typicality, the court noted that with regard to promotions, the evidence demonstrated that the defendant virtually excluded black persons from upper level jobs throughout the company. The court noted that the question of whether a class should be certified on the hiring claim was more difficult because all of the plaintiffs had been employed by the defendant. *Id.* at 700. Nevertheless, the court determined that the former employees could represent applicants who were not employed, stating:

> This court is of the opinion that the plaintiffs herein properly can represent applicants even though the plaintiffs were all hired, because the defendants used one *entirely subjective selection system* for all selection decisions. The evidence demonstrates that employees from within and outsiders competed for the same jobs. There are no separate hiring and promotion policies. All selection decisions are made by an exclusively white management staff. This is true whether the selection is made by the store manager to fill a part-time position or whether the selection is for a full-time position requiring upper management approval.... The defendants hire outsiders and promote incumbents using the same selection system that is entirely subjective. The defendants operate "under a general policy of discrimination" that is "manifested in the same general fashion." *General Telephone Co. of the Southwest v. Falcon,* 457 U.S. at 159, n. 15, 102 S.Ct. at 2371 n. 15. Accordingly, this court agrees with the plaintiffs that they can adequately represent a class of applicants and incumbents under the authority of *Falcon* footnote 15.

*Id.* at 701 (emphasis in original).

Here, as in *Wynn,* the Plaintiffs seek to attack the selection system for all selection decisions. Despite individual differences in their claims, those Plaintiffs who applied for

employment and were rejected or who worked for Home Oil, in a capacity other than store manager, are in a position to fairly represent the class claims. Those claims allege that the Defendants operate under a "general policy of discrimination" which is "manifested in the same general fashion," such that African–Americans are denied opportunities in hiring and promotion. Thus, there are named Plaintiffs who have established the prerequisites of commonality and typicality with regard to the hiring and promotion practices at the Hobo Pantry Stores.

▮▮▮▮ As to the Plaintiffs' hostile environment claims, however, class certification is improper because these claims are not subject to generalized proof in this case. A hostile work environment claim requires a showing of severe or pervasive conduct. *Burlington Industries, Inc. v. Ellerth,* 524 U.S. 742, 118 S.Ct. 2257, 2265, 141 L.Ed.2d 633 (1998). In determining whether the nature of the harassment is severe and pervasive, courts must examine the totality of the circumstances. *Harris v. Forklift Systems,* 510 U.S. 17, 23, 114 S.Ct. 367, 126 L.Ed.2d 295 (1993). The totality of the circumstances includes, but is not limited to, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id.* To be actionable, "a sexually objectionable environment must be both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and one that the victim in fact did perceive to be so." *Faragher v. City of Boca Raton,* 524 U.S. 775, 118 S.Ct. 2275, 2283, 141 L.Ed.2d 662 (1998).

Applicants who were not hired and never worked at a Hobo Pantry store could not have been subjected to a hostile working environment in the same manner as Home Oil employees. Moreover, the Plaintiffs identified twenty-one separate Hobo Pantry Stores. The problem of multiple facilities creates a formidable barrier to class certification of the Plaintiffs' hostile environment claims. With regard to hiring and promotion, the Plaintiffs' theory is that Jim Quintero adopted the employment practices used at the Hobo Pantry stores to prevent the hiring and promotion of African–Americans. Proof that Jim Quintero made the alleged racist comments and exercised control over hiring decisions may establish that Home Oil intentionally discriminated against African–Americans at the separate stores in the same manner. The Plaintiffs can satisfy commonality because they are attacking specific employment practices which they allege are common to all facilities.

The hostile environment claims are not in the same posture. Because there were twenty-one separate facilities, the named Plaintiffs and potential class members experienced different work environments. No generalized proof about Mr. Quintero's racist comments or attitudes can establish liability on a class basis for the Plaintiffs' hostile environment claims. The evidence reflects that some employees had little or no contact with Mr. Quintero. Robert Condrey, for example, stated that he could not remember having a conversation with Mr. Quintero and that he had never heard any Home Oil management personnel say anything derogatory about African–Americans. Condrey Dep. at 62–63.

The testimony of other named Plaintiffs shows that the hostile environment claims are dependent on the comments and actions of individual store managers. Gloria Faulk complained about Mary Delk's attitude, that Ms. Delk often wrote her up, that Ms. Delk threw applications from African–Americans in the trash can, and that Ms. Delk used a racial epithet. Faulk Dep. at 63–65, 87, 92–95, 99–104. She also complained about Kathy Vaughn's use of a racial epithet. *See id.* at 201. Kent Grubbs testified that his store manager, Carlton Jones, made numerous racist comments. Grubbs Dep. at 45, 50–51.

In sum, the Plaintiffs have established commonality and typicality with regard to Home Oil's hiring and promotion practices. They have not met the prerequisites with regard to their hostile environment claims. The individual claims of hostile environment are sufficiently different that they will require different proof to establish liability. Thus, those claims cannot be certified.

**Adequacy of Representation**

 The adequacy-of-representation requirement "tend[s] to merge" with the commonality and typicality criteria of Rule 23(a), which "serve as guideposts for determining whether ... maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157, n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982). Adequacy of representation also raises concerns about competency of class counsel and conflicts of interest. *See id.*, "The adequate representation requirement involves questions of whether plaintiffs' counsel are qualified, experienced, and generally able to conduct the proposed litigation, and of whether plaintiffs have interests antagonistic to those of the rest of the class". *Griffin v. Carlin*, 755 F.2d 1516, 1533 (11th Cir.1985) (citing *Johnson v. Georgia Highway Express, Inc.*, 417 F.2d 1122, 1125 (5th Cir.1969)).

Plaintiffs' attorneys have shown that they are competent to represent the class, and there has been no showing of impermissible conflicts of interest. Defendants suggest, however, that the Plaintiffs are not adequate representatives because many are not "fully aware of what it means to be a class representative," and few show any interest in the prosecution of the case.[5] The Eleventh Circuit has stated, "[A]dequate class representation generally does not require that the named plaintiffs demonstrate to any particular degree that individually they will pursue with vigor the legal claims of the class." *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 727 (11th Cir.1987). Accordingly, based on the rationale supporting a finding of commonality and typicality, the court finds that these Plaintiffs may fairly and adequately represent the interests of the class.

**Rule 23(b)**

 Even if the Plaintiffs establish all prerequisites for maintenance of a class action under Rule 23(a), the court must determine whether the action may be maintained as one of the classes under Rule 23(b). The Plaintiffs seek certification under Rule 23(b)(2), which provides:

(b) Class Actions Maintainable. An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied, and in addition

...

(2) the party opposing the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole....

The Defendants assert that the Plaintiffs' demand for compensatory and punitive damages renders class certification under Rule 23(b)(2) improper because it will require an individualized assessment of each Plaintiff's claims. In support, the Defendants cite *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir.1998).

In *Allison*, the plaintiffs sought certification of a group of black applicants and employees. Proceeding under disparate impact and disparate treatment theories of discrimination, they challenged Citgo's failure to post or announce job vacancies, use of word-of-mouth publication, use of tests to evaluate candidates for hire or promotion, and subjective decisionmaking process by a predominantly white supervisory staff in reviewing applicants and employees at Citgo's Lake Charles, Louisiana manufacturing facilities. The plaintiffs sought injunctive, declaratory, and monetary relief including compensatory and punitive damages. They demanded a jury trial on their claims of intentional discrimination. *Id.* at 407–08.

A magistrate judge conducted an evidentiary hearing and determined that, although the proposed class met the requirements of

---

**5.** The Defendants specifically refer to two named Plaintiffs, Harvette Culver and Pamela Humphrey. Ms. Culver refused to answer questions at her deposition and left abruptly. Ms. Humphrey twice failed to appear at her scheduled deposition. The Plaintiffs' attorneys have stated that they no longer seek to have Ms. Culver or Ms. Humphrey act as class representatives. The other Plaintiffs all attended their depositions and freely answered questions.

Rule 23(a), it could not be certified under Rule 23(b). Regarding Rule 23(b)(2), the magistrate found that the requested money damages required significant individualized proof and thus were not sufficiently incidental to injunctive relief to warrant class certification. Similarly, the magistrate refused to certify a class under Rule 23(b)(3) because the need for individualized damages determinations caused individual issues to predominate over common ones and the class action would not be a superior method for fair and efficient adjudication of the controversy. The magistrate judge also rejected bifurcation of the trial into liability and damages stages and certifying a class on the claims for injunctive relief. The district court adopted the report and recommendation of the magistrate and denied class certification. *Id.* at 408.

The Fifth Circuit affirmed the judgment of the district court. Addressing the plaintiffs' argument that the class should have been certified under Rule 23(b)(2), the court turned to the advisory committee notes to the rule, which state that certification under (b)(2) "does not extend to cases in which the appropriate final relief relates exclusively or *predominantly* to money damages." *Id.* at 411 (quoting Fed.R.Civ.P. 23 (advisory committee notes) (emphasis added)). The court held that "monetary relief predominates in (b)(2) class actions unless it is incidental to requested injunctive or declaratory relief. By incidental we mean damages that flow directly from liability to the class *as a whole* on the claims forming the basis of the injunctive or declaratory relief." *Id.* at 415 (citations omitted) (emphasis added). According to the court, the predomination requirement serves two purposes-it protects the legitimate interests of potential class members who might wish to pursue their monetary claims individually, and it preserves the legal system's interest in judicial economy. *Id.* at 413–14.

Turning to the claim for compensatory damages, the court stated, "[C]ompensatory damages under Title VII and 42 U.S.C. § 1981 are not incidental to class-wide injunctive or declaratory relief for discrimination." *Id.* at 417. The court found that the "very nature" of compensatory damages was compensating plaintiffs for "emotional and intangible injuries," which necessitates inquiry into the "subjective differences of each plaintiff's circumstances." *Id.* Similarly, the court held that punitive damages were not incidental to injunctive or declaratory relief. A finding that the defendant engaged in a pattern or practice of discrimination would not automatically entitle plaintiffs to punitive damages. In addition, punitive damages must be reasonably related to the reprehensibility of the defendant's conduct and to the compensatory damages awarded to the plaintiffs. *See id.* at 417–18. In summary, the court stated that compensatory and punitive damages are "awarded on the basis of intangible injuries and interests," and are "uniquely dependent on the subjective and intangible differences of each class member's individual circumstances." *Id.* at 418.

The court then addressed the district court's refusal to certify a class under Rule 23(b)(3), which provides for class certification when "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." The *Allison* court cited an Eleventh Circuit case, *Jackson v. Motel 6 Multipurpose, Inc.,* 130 F.3d 999, 1006 (11th Cir.1997), to support its holding that the plaintiffs' demand for compensatory and punitive damages made certification under 23(b)(3) inappropriate.

In *Jackson,* the Eleventh Circuit found an abuse of discretion in a district court's decision to certify a class for claims based on Motel 6's alleged nationwide racially discriminatory practice of renting vacant rooms and providing housekeeping services. The court noted, "The *Jackson* plaintiffs' claims will require distinctly case-specific inquiries into the facts surrounding each alleged incident of discrimination." *Id.* Thus, the court found that most of the plaintiffs' claims would stand or fall on the case-specific issues, rather than a finding of a pattern or practice of discrimination. *Id.*

Citing *Jackson*, the *Allison* court determined that the plaintiffs' claims for damages would focus "almost entirely on facts and issues specific to individuals rather than the class as a whole." *Allison*, 151 F.3d at 419. In turn, the predominance of individual-specific issues relating to claims for compensatory and punitive damages detracts from the superiority of the class action device in resolving the claims. *Id.* The court also feared potential Seventh Amendment problems in the event of bifurcated proceedings before multiple juries. *See id.* at 420. The court found no error in the district court's analysis of Rule 23(b)(3) because the success of the claims depended on the special circumstances of each individual's case. *See id.*

Finally, the court rejected a bifurcated approach to the claims. The court found no legal basis for certifying a class action on the first stage of a pattern or practice claim when there is no foreseeable likelihood that the claims for compensatory and punitive damages could be certified. *See id.* at 421. With regard to the plaintiffs' disparate impact claim for which only equitable relief was available, the court determined that the Seventh Amendment precluded certification. The court noted, "When claims involving both legal and equitable rights are properly joined in a single case, the Seventh Amendment requires that all factual issues common to these claims be submitted to a jury for decision on the legal claims before final court determination of the equitable claims." *Id.* at 423. Because both the legal and equitable claims challenged the same employment policies and practices, there were overlapping factual issues. Thus, the court decided that the claims for injunctive relief, declaratory relief, and equitable or incidental monetary relief could not be litigated in a class action bench trial "without running afoul of the Seventh Amendment." *Id.* at 425.

The Plaintiffs vigorously assert that *Allison* was wrongly decided, which is not surprising given its potential effect on the viability of the class action device in the area of employment discrimination. Primarily the Plaintiffs contend that *Allison* is inconsistent with prior Fifth and Eleventh Circuit cases allowing certification under Rule 23(b)(2) even where the claims involved backpay. *See, e.g., Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1554 (11th Cir.1986); *Pettway v. American Cast Iron Pipe Co.*, 494 F.2d 211, 256–57 (5th Cir.1974).

The *Allison* court, however, did not reject that line of cases. The court noted that backpay has long been recognized as an equitable remedy and an integral part of Title VII's remedial scheme. *See id.* at 415. Prior cases allowing certification of claims involving backpay did not address the availability of a class action under Rule 23(b)(2) for other forms of monetary relief, such as compensatory or punitive damages. *See id.* at 416. Moreover, prior to the passage of the Civil Rights Act of 1991, which allowed either party to demand a jury trial when the plaintiff seeks compensatory and punitive damages, district courts could use techniques such as appointing special masters to streamline the process of determining appropriate backpay awards. *See id.* at 409.

In two recent cases, this court adopted the predomination analysis espoused in *Allison. See Pickett v. IBP, Inc.*, 182 F.R.D. 647, 657 (M.D.Ala.1998) (Albritton, J.); *Taylor v. Flagstar Bank*, 181 F.R.D. 509, 518 (M.D.Ala.1998) (Albritton, J.).[6] In *Taylor*, the court determined that an action seeking treble damages under the Real Estate Settlement Procedures Act should not be certified as either a Rule 23(b)(2) class action or a hybrid class action, which superimposes the opt-out procedures of Rule 23(b)(3) on a(b)(2) class. The court noted that "(b)(2) actions may certainly be certified where damages are sought in addition to an injunction," but not in cases where Plaintiffs primarily sought monetary relief. *Taylor*, 181 F.R.D. at 518. Additionally, the court noted that the monetary relief being sought was not the type which grows out of injunctive relief, like back

---

**6.** *Taylor* actually cited to the first panel opinion in *Allison*, which was withdrawn and substituted by the opinion published in the Federal Rules Decision Reporter. The published opinion altered the withdrawn opinion only by expanding the court's treatment of the Seventh Amendment issue and bifurcation of the disparate impact and disparate treatment claims. Thus, the portion to which the *Taylor* opinion cites remains good law.

pay. In a footnote, the court cited *Allison* and stated, "Certification of many Title VII cases as class actions may no longer be appropriate, given the expanded damages now made available under Title VII by the Civil Rights Act of 1991." *Id.* at 519 n. 4.

In *Pickett v. IBP, Inc.*, 182 F.R.D. 647, 657, this court cited *Allison* to hold that Plaintiffs' request for compensatory and punitive damages under the Packers and Stockyard Act would require individualized proof and determinations. Therefore, the requested monetary relief was not incidental to injunctive or declaratory relief and thus could not support certification under (b)(2). The court also cited *Celestine v. Citgo Petroleum Corp.*, 165 F.R.D. 463 (W.D.La.1995), the district court case which gave rise to *Allison*, in support of its determination that bifurcation would not resolve the certification problems. The court noted the complexity of the damages calculation and rejected the Plaintiffs' request for bifurcation because Plaintiffs simply assured that bifurcation would solve certification problems without discussing how the damages determinations would be made in the second stage. *Pickett*, 182 F.R.D. at 659.

This court stated in *Pickett* that it was "persuaded by the reasoning of the Fifth Circuit and is convinced that the Eleventh Circuit would also apply similar analysis." *Id.* This court is still of that opinion. Accordingly, despite having met the prerequisites for class certification set forth in Rule 23(a), the Plaintiffs' claims for compensatory and punitive damages render class certification inappropriate under Rule 23(b) in this case.

## V. *CONCLUSION*

The issue of class action certification is determined by very different considerations now than prior to passage of the 1991 Civil Rights Act. That is because the 1991 Act added a right to claim compensatory and punitive damages and the right to have the factual issues determined by a jury. Plaintiffs do not have to claim such damages and demand a jury, and if they do not, the old considerations will apply. Plaintiffs here, however, have chosen to seek compensatory

and punitive damages and to have them assessed by a jury. Their having done so, this court finds that the Fifth Circuit case of *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402 (5th Cir.1998), if binding on this court, would prohibit certification. The court is of the opinion, particularly in view of the decision in *Jackson v. Motel 6 Multipurpose, Inc.*, 130 F.3d 999, 1006 (11th Cir.1997), that the Eleventh Circuit will apply the same reasoning as the Fifth Circuit, with similar results.

For the reasons stated above, it is hereby Ordered that the Plaintiffs' Motion for Class Certification is DENIED.